NATIONAL CASH REGISTER CO. *v.* HUDE.

[80 South. 378, Division B.]

1. SALES. *Installment paid. Common law lien of buyer.*

Where a cash register company sold a machine to a buyer under a contract reciting that the payments made should be retained as rent for the use of the cash register, such provision does not apply in a case where the cash register is defective and does not come up to representations.

2. SAME.

This clause would become applicable only in case the cash register was as represented, and was retained by the defendant under conditions where the plaintiff or seller had complied with his part of the contract.

3. SAME.

To disaffirm or rescind a contract for the sale of a cash register on account of misrepresentations, the buyer must tender the cash register back to the seller, and he could then enter suit for any amount paid the seller under such contract, but for such payments, the buyer has neither a statutory or common-law lien on the property sold.

4. SAME.

Where the seller of merchandise delivers goods of an inferior quality to that required by the contract, the buyer may: First—Reject the goods and sue for damages, or, Second—Pay the contract price, take the goods and recover the difference between their value and the value of the goods required by the contract.

5. SAME.

The only method of acquiring a lien on the property by the buyer in such case would be by attachment.

6. SAME.

Where, in a suit by a cash register company against a buyer for the purchase price of a machine upon which partial payments had been made the defendant did not file any offset or plea of recoupment, his rights for money paid in partial payments on such machine were not adjudicated in such suit.

APPEAL from the circuit court of Warren county.

HON. E. L. BRIEN, Judge.

Replevin by the National Cash Register Company against John Hude. From the judgment rendered, the plaintiff appeals.

The facts are fully stated in the opinion of the court.

*J. C. Bryson,* for appellant.

The plaintiff's declaration and the defendant's pleas and notice presented to the court below two issues and only two for decision, both mixed, involving questions of fact and law. These issues may be stated as follows:

1st—Estoppel *in pais*—The notice admits the sale and delivery of the register in dispute by complainant to defendant and avers that the complainant had in a former case, sued the defendant for the balance due of the purchase price, and thereby estopped itself from claiming title and right of possession to the register.

2nd—That defendant had the right to hold possession of the register because of a lien in his favor thereon for the sum of two hundred and thirty-five dollars which he had paid thereon before electing to cancel the contract for breach of warranty.

The court below decided the first issue in favor of the appellant and the defendant has not appealed, hence, his action in that regard is not drawn in question before this court.

The second issue having been decided against appellant, is drawn in question and must now be decided. The sole question before the court is—Did Hude acquire a lien or claim on the register in question by virtue of the partial payments made by him to the plaintiff on the purchase price?

The contract of sale certainly did not declare any lien on the machine to secure the repayment to Hude of any money paid by him on the purchase price while

trying out the machine. The only contractual provision which by any possibility might be construed as bearing on this point, is as follows: "Upon failure of the undersigned Hude to make any payment provided here- in at the time same is due, and payable, you (ap- pellant) or any person by your order may take possession and remove said register without legal pro- cess, and in such case it is agreed that all payments theretofore made to you thereunder shall be considered as having been made for use of register while in possession of undersigned and such payments shall be retained by you as rental.

Counsel for defendant in the court below contended and the lower court must have agreed with them, that the foregoing provision contemplated a machine which fulfilled the requirements of the contract and not one which had been held not to fulfil the contract.

Whether this contention and holding be sound or not, we submit it cannot help appellee's case. If sound, it merely renders the contractual provision inapplicable and ineffective, it cannot be distorted or twisted so as to give Hude any claim on the machine or right to possess it, after default in payment. It was simply in- tended to protect the seller and not the buyer.

Since the contract does not give Hude a lien on the register to secure a return to him of any part of the purchase price he might have paid, before refusing to accept the machine, such lien cannot arise except by operation of law or by statute.

Certainly no statute confers such lien. That has never been contended.

I have not understood counsel to contend specifically that a lien arises in Hude's favor by operation of law, but as that is the only possible way (other than by contract or by statute) a lien could possibly arise, I conclude they must be understood as asserting a lien

by operation of law. Such liens are declared to exist according to the text in 17 R. C. L., page 601, paragraph 8, to wit:

"A common-law lien is the right of a person to retain that which is within his possession belonging to another until certain demands against such other persons are satisfied. . . . Particular liens, have always been admitted by the common law in favor of those persons, such as inn-keepers, common carriers, and warehousemen, who are bound by law to serve the public in their trades and occupations."

This text further holds that such liens exist in favor of "other persons in a variety of cases, where such persons by their labor and skill have imparted an additional value to the goods." Hude's case does not fit with either condition, he was not in a public service business, and he did not perform any work on the register whereby its value was improved.

In the case of *Howze* v. *Rook Lbr. Co.*, decided on July 8, last, reported in 79 So. 98, not yet out, it was sought to establish a lien in appellees' favor on a house constructed of lumber taken by appellant from a building on a lot bought at a tax sale by appellees, as to which appellee's tax title had not matured at the time of conversion, and the court held there was no lien but merely a right of action for the value of the house destroyed. "There is no statutory or common-law lien upon appellants' land." This is a negative assertion that liens (in the absence of contract) can arise only by common law or statute.

In the present case we submit there is neither common-law grounds or statute to sustain the lien claimed.

In the argument before the court below the cases of *Warner* v. *Fant*, 74 So. 822, and *Munn* v. *Bowser*, 75 So. 372, were relied on. The Warner case involved the selection of remedies and nothing else. Fant, the

moving party, had first brought suit by garnishment and attachment, and afterwards joined in a creditors' bill and the court held that he selected his forum and remedy when he commenced the first action and was bound by that election and could not re-open the controversy in the second suit after it had been decided against him in the first.

It seems to me that no such question can be involved in this case. It is apparent, however, that counsel for Hude could have so framed the issue in the first suit that it would have been determinative of the present. Had opposing counsel plead in recoupment, or offset, or counterclaim, or some other form, so as to raise the question of the value of the register and whether or not the same had been paid by Hude. Such a plea after trial and verdict therein in Hude's favor would have precluded the plaintiff in the case. Such issue however was not raised, counsel for Hude elected not to plead payment, but no sale, and therefore an absolute failure of consideration. Under this plea the only issue passed on was whether there was a valid sale, and if not, nothing could be owing. The value of the register, and whether or not such value had been covered by the payments already made by Hude, was not drawn in question, or passed on. The first instructions asked and given in favor of Hude on the former trial makes the issue submitted to the jury clear.

The second case, *Munn* v. *Bowser,* 75 So. 372, 114 Miss. 500, while closely related to the case at bar, involved an entirely different issue from that now before the court. Bowser sold a gasoline tank, reserving title in himself until paid for in full, taking a note for the purchase price. Default was made in the payment of the note and suit was brought as in the present case—"the defendant filed a plea of recoupment or set

off,'' unlike the present case, and the jury found a verdict for defendant, like this case. Afterwards Bowser brought replevin for the tank, the same as in the present case. It will be observed that the only difference between the case at bar and the *Munn* v. *Bowser* case arises from the nature of the plea filed in the first suit. The right to recover in replevin in each case must rest on the retention of title by the sales contract in the seller. In each case, the retention of title was for security only, and under each contract the purchaser on discovery of the breach of warranty had the option of two separate and distinct remedies, to wit: (a) to reject the thing as delivered as not fulfilling the contract; (b) to accept the thing delivered for what it is worth, reserving a right of action on the warranty or right of recoupment or offset against the purchase price or against the seller for the difference in value between the thing as represented and delivered. See *Hall Com. Co.* v. *Crook,* 87 Miss. 445; *Mobile Auto Co.* v. *Sturges,* 66 So. 205, 107 Miss. 848; *Bowers* v. *So. Auto. Music Co.,* 74 So. 774, 114 Miss. 25.

In the case at bar, Hude adopted the first horn of the dilemma. He rejected the register entirely and absolutely. Having elected to take this course, he is bound by its consequences. He thereby voluntarily surrendered all claim to, or interest in, or right to possess, the register. He elected to stand on his right of action on the contract for a breach of warranty. Had he adopted the second horn of the dilemma by electing to accept the register at what it was worth and offset or recoup against the purchase price, the difference in value between the register as warranted and as delivered, then he would have brought himself within the ruling of *Munn* v. *Bowser,* the case upon which he relies but not having done so, that case can have no bearing on this.

In the case at bar, Hude had paid two hundred and thirty-five dollars on the register, and still owed three hundred and forty dollars, the two items making up the purchase price of five hundred and seventy-five dollars. Had the register fulfilled the contractual warranties, Hude would have owed appellant five hundred and seventy-five dollars less what he had paid, but since he elected, in the first suit, not to accept the register, but to reject it absolutely, as not fulfilling the warranties, and plead to that effect, and the jury decided in his favor, it is now too late to shift his position, and plead and prove that he did accept the register and has paid its value.

The question of whether or not he has paid the value of the register has never been raised by the pleadings or decided by the court. It is quite true he could have raised it, and had it tried, but he did not. Nevertheless, he now seeks to have this case determined on the theory that such issue was raised and decided in his favor in the former suit.

Appellant is not at fault that the issues, in the former suit, were not so framed as to give Hude the largest advantage he might have obtained by the judgment in that case. Hude selected his own battlefield, and pitched his battle, and if the judgment does not have as far reaching effects as he thinks it ought to have, he can justly blame no one but himself.

Throughout the first suit Hude took the position that the register was the property of appellant, the National Cash Register Company. He set out in his notice, that the register was: "Plaintiff's register, and subject to his order. The defendant has often offered to return the register . . . the defendant holds the said register as bailee for the plaintiff." This language is wholly inconsistent with appellee's present attitude.

No case is cited, no authority shown, no sound reason given, and no equity invoked, whereby his present contention, that he has a lien on, or an interest in, or claim to, the register, entitling him to its possession, can be sustained as against the appellant, yet the court below, by its judgment sustains the appellee's contention, and this, we confidently submit, was error, demanding the reversal of the case, and judgment here for appellant.

*Henry & Conizaro,* for appellee.

Appellant begins its argument with the statement that the issues presented to the court below were two, to wit: 1st—Estoppel *in pais;* and 2nd—That the defendant had a right to hold possession of the register because of a lien in its favor.

This statement by learned counsel for appellant omits the material main point or the real issue which was made in the court below, and now urged in this court, on the appeal of the appellant and submits: The real issue involved was and is now the inability of the plaintiff, appellant here, to maintain its writ of replevin and so acquire possession of the cash register for two reasons.

1st—In a former suit instituted by appellant on the note given in payment for the balance due, it elected to declare for the balance due and sued for the purchase price, when it could have included in its suit a writ of seizure and enforcement of its lien on the register; having so elected and selected its remedy, and having been defeated by verdict of jury, the entire matter is *res adjudicata,* and a writ of replevin is not maintainable.

2nd—The inability of the appellant to maintain a writ of replevin before placing or offering to place the buyer, appellee, here, *in statu quo,* by returning him

the two hundred and thirty-five dollars which appellant had received from appellee.

The adjudication of the first suit from which there was no appeal, decided and placed beyond dispute the following questions:

The Cash Register Company, appellant, agreed to deliver to John Hude a cash register that would be adapted to special purposes or work. That the cash register which was delivered to Mr. Hude, No. 544 (3) E. L. R. 1 S. 1392331, failed to fulfill the warrant. The appellant company then agreed to exchange this first register for the register now in controversy, warranting that this last register would fulfill the special purposes and special features which are not necessary to mention. That the second register was inherently defective in its mechanical arrangement, which defects were only ascertainable by the use of it.

By the former case, it was also decided that immediately upon Mr. Hude discovering that the seller's warrant was breached he stopped the use of the register and notified the seller that he considered the contract as rescinded and held the register as bailee and subject to the seller's order. It was also decided and the record shows the fact that the seller had obtained two hundred and thirty-five dollars from Mr. Hude, the buyer, through fraud and misrepresentation. These facts are now beyond dispute. Nevertheless, the contention of the National Cash Register Company, anpellant, is that it is entitled to exact pay and satisfaction for its misrepresentation and fraud. It seeks to obtain the unconditional possession and surrender of the register and also hopes to retain the two hundred and thirty-five dollars collected from the appellee, presumably as a premium for its astuteness and cleverness in the fraudulent transaction. It is suggested by appellant that the appellee cannot now recover the

money paid out by him on the faith and reliance of the warrant of the appellant, because in the first suit, he failed to file a counterclaim for damages for breach of warranty. It will be. noted that Mr. Hude had agreed to purchase a cash register which would perform certain special work this being the paramount reason which induced Mr. Hude to buy the register. Being not adapted to the special purposes as warranted, the register was of no use to Mr. Hude. He had no intention of keeping it. Had there been a question of diminution of value between the purchase price and the actual value, then there might have been reason for Mr. Hude to file a counterclaim for breach of warrant for the difference between the agreed price and the actual value. The first suit was not tried on the theory suggested by the appellant. If the first suit instituted had included a writ of seizure to enforce the lien of the cash register company, then it might have been the duty of the appellee to file a counterclaim. That would have been in line with the authority cited by the appellant at page 11 of its brief.

One of the cases relied on by appellant is the case of *Bowers* v. *So. Auto Music Co.*, 74 So. 774, 113 Miss. 25. The plaintiff in that case sued for part of the purchase price of a Wurlitzer piano, of the value of more than six hundred dollars, suit being declared on the notes and writ of seizure granted to enforce the lien for the unpaid purchase price. The court will observe that a writ of seizure having been granted to enforce the lien for the unpaid purchase price, it was necessary for the appellant Bowers to claim damages by way of recoupment.

In the case at bar, there was no writ of seizure; Hude, in the first suit, was sued for unpaid notes, he defended on the warranty, and won—this second suit is one of replevin, and not writ of seizure, so we now

interpose a lien for amount paid on defective machine —in other words recoup for what we feel we have been defrauded out of by the sale of a defective machine. This case supports our contention.

The case of *Mobile Auto Co.* v. *Sturges,* 66 So. 205, 107 Miss. 848, is unlike the case at bar. In that case the automobile was purchased by the buyer for the purpose of reselling it. On discovering the breach of warrant, the purchaser had the right to reject the car and enter suit for damages for breach of contract or to pay the price, or to take the car and recover the difference between its value in the condition received and the value of the car required by contract. To the same effect is the case of *Com. Co.* v. *Crook,* 87 Miss. 445.

The case of *Howze et al.* v. *Rook Lbr. Co.,* decided July 8, 1918, reported in 79 So., page 98, on which the appellant placed great reliance, is not in point. It will be noted that the prayer of the bill in that case was for a lien on the land of the appellant and not on the lumber itself removed from the land claimed by the appellee, and the decree of the chancery court in that case having given a lien on the land was properly reversed. The court announced in that case that it was well settled that the appellee was entitled to recover the value of the house, but that there was no statutory or common-law lien upon the appellant's land. So we cannot understand how this can be of any assistance to appellant.

By the statement of appellant's counsel, appellant is endeavoring to commit the appellee to the idea that he is claiming a lien on the register by virtue of the written contract between the parties—far from it. The appellee, since rejecting the register, had regarded, and does now rgard, the contract of no force or effect.

35 Cyc, 536—"Election of remedy—where the buyer has been guilty of ,fraud in inducing the sale the right of the seller to avoid the contract and recover the goods, is not exclusive, but he may sue on contract for the price; but a suit to recover the price of the goods sold and another to recover the goods on the ground of fraud in the buyer cannot be maintained at the same time, and if the seller rescinds the sale, he cannot recover the price as such; and while where the sale is induced by fraud, the seller may declare in tort or contract, having made his election, he is bound by it. Other proceedings to enforce collection of the debt, such as attachment, do not, however, affect the right of the seller to bring an action for the price, such proceeding being in affirmance of the sale and not inconsistent with another suit for the same purpose; but ordinarily, an action for the price is barred by an action in replevin to recover the goods, such proceeding being by way of disaffirming the sale."

The announcement of this law is binding on the seller where the buyer has been guilty of fraud, for more cogent reason it is binding on the seller when the seller itself and not the buyer has been guilty of fraud.

We think the following cases of recent decision support our contention: *Munn* v. *S. F. Bowser & Co.,* 75 So. 373; *Warriner* v. *Fant,* 74 So. 822; *Harrison* v. *Turner,* 77 So. 728; *Home Ins. Co.* v. *Tate Mercantile Co.,* 78 So. 709; *Reynolds* v. *Copeland,* 71 Ind. 422; *Harvey* v. *Petrie,* 100 Mich. 190, 59 N. W. 187; *Pangborn* v. *Ruemenapp,* 74 Mich. 572, 42 N. W. 78; *Oskamp* v. *Crites,* 37 Neb. 837, 56 N. W. 394; *Dodge* v. *Fearey,* 19 Hun. (N. Y.), 277; *Moffitt* v. *Shields,* 67 Mich. 610, 35 N. W. 174; 35 Cyc, 513; *Moriarity* v. *Stofferan,* 89 Ill. 528; *Hibben D. G. Co.* v. *Hicks,* 26 Ind. App. 646, 59 N. E. 938; *Gittings* v. *Carter,* 49 Iowa, 338; see, also, *Thomas* v. *Dickinson,* 65 Hun. (N. Y.), 5, 19 N. Y.

Suppl. 600; *Baker* v. *McDonald,* 1 L. R. A. (N. S.), 474; *Sission* v. *Hill,* 21 L. R. A. (N. S.), 206.

The great weight of authorities hold that when the seller attempts to replevy from the buyer the goods sold and thereby rescind the contract he must first restore the latter to the same condition of advantage that he occupied before the purchase, even in cases where the purchaser is at fault. *Wilcox* v. *St. Jose Fruit Pkg. Co.,* 113 Ala. 519, 59 A. S. R. 135; *Adams, etc., Co.* v. *Stewart,* 157 Ind. 678, 61 N. E. 1002, 87 A. S. R. 240; *Hambrick* v. *Wilkins,* 65 Miss. 18; *Swann* v. *West,* 41 Miss. 104.

The course announced above was pursued by Mr. Hude in this case. The victim of the fraud, after having offered to return the property which was refused by the seller, this fact being set out in the defendant's notice of general issue in the first case, had a right to sell the cash register in good faith, in order to re-imburse himself. This right, as we conclude, can only be based upon a common-law lien or lien by operation of the law, which Mr. Hude had against the register, without it he would have no right to dispose of the property.

The court below reached the conclusion that Mr. Hude had a legal charge and common-law lien against the register and that replevin could not be maintained without the cash register company first refunded Mr. Hude his money, the two hundred and thirty-five dollars with interest. The proper and just conclusion was reached by the court and the judgment, we respectfully submit, must be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

This is a suit by the National Cash Register Company in replevin for a machine or cash register sold

to appellee for use in his business in the city of
Vicksburg. The contract provided for cash install-
ments in monthly payments, and provided in default
of any payment as provided in said note, it is agreed
that all unpaid payments shall at once become due and
payable, and that upon failure to make any payment
provided herein at the time same is due and payable
that the company shall take possession and remove
said register without process, and in such case it was
agreed that all payments theretofore made under the
contract are considered as having been made for use
of the register while in possession of the purchaser,
and such payments shall be retained by the company
as rental.

Prior to the institution of this suit the appellant had
filed a suit against the appellee in the circuit court for
the full amount of the purchase money because of a
default in payment, and trial was had in the circuit
court, in which the defendant defended upon the ground
that the cash register sold him would not do the work
it was purchased to do, and that the defects were not
discoverable except by use, and on discovering the
defects the defendant had notified the company of the
defects and elected to rescind the sale, and had ten-
dered the cash register to the appellant. The jury in
that case found for the defendant, and no appeal ap-
pears to have been taken from that judgment. There-
after this suit was instituted in replevin, and the de-
fendant declined to surrender the cash register until
the register company had repaid to the defendant the
sum of two hundred and thirty-five dollars which he
had made as payments on the cash register; a part
being in cash at the time of the purchase and some
payments after receipt of the cash register. The de-
fendant in this suit also defended on the ground that
he was entitled to a common-law lien on the cash

119 Miss.—4

register until the money paid on the cash register was repaid. The case was submitted to the circuit judge without a jury, and the judge entered a judgment reciting that, being fully advised in the premises, he finds that the plaintiff do have and recover the cash register No. 1446821 in suit upon tendering and paying to the defendant, John Hude, the sum of two hundred and thirty-five dollars, with interest to accrue from this date, and all costs accrued therein, and in default of which then it is ordered by the court that said cash register be sold at public auction to the highest bidder for cash by the sheriff of this county in compliance with the statute on execution, and the proceeds thereof said sheriff shall distribute as follows: First, the cost of this proceeding; second, satisfy if it can the claim of John Hude, the defendant, amounting to two hundred and thirty-five dollars; third, and the balance, if any, to be paid to the plaintiff. From this judgment the National Cash Register Company appeals here.

We think that the judgment in the first suit established the fact that there was no sale made and that the defendant had rescinded and tendered back the cash register in question. We think that the clause in the contract set out above reciting that the payments made should be retained as rent for the use of the cash register does not apply in a case where the cash register is defective and does not come up to representations. This clause would only become applicable in case the cash register was as represented and was retained by the defendant under conditions where the plaintiff or seller had complied with his part of the contract. We think, however, that there was no common-law or other lien upon the cash register in favor of the buyer. To disaffirm or rescind the contract for misrepresentation the buyer would have to tender the cash register back to the seller, and he could enter suit

for any amount paid the seller under such contract. We know of no statute giving a lien in a case of this kind, and certainly none exists under the common law. The remedies of the buyer have been announced by this court in several cases. In the case of *Hall Commission Co.* v. *Crook,* 87 Miss. 445, 40 So. 20 and 1006, this court announced the remedies of the buyer as follows: Where the seller of merchandise delivers goods of an inferior quality to that required by the contract, the buyer may: First, reject the goods and sue for damages; or, second, pay the contract price, take the goods, and recover the difference between their value and the value of the goods required by the contract. This rule is also announced in *Westmoreland* v. *Walker,* 25 Miss. 76, and *Hambrick* v. *Wilkins,* 65 Miss. 18, 3 So. 67, 7 Am. St. Rep. 631, and is recognized in *Mobile Auto Co.* v. *Sturges,* 107 Miss. 848, 66 So. 205.

The only method of acquiring a lien upon the property in cases of this kind that has been called to our attention, or that we have found upon careful investigation, is one created by attachment. There was, however, no attachment in the present suit and no action by the defendant seeking or claiming any relief other than a lien under the common law. In the first suit the defendant in that suit, appellee here, did not file any offset or plea of recoupment, and his rights for money paid on the cash register were not adjudicated in that suit. We think it was error for the judge in his judgment to impose a condition of repayment on the right to recover, and it was error for him to direct the sale of the cash register in this proceeding. Accordingly the judgment in the court below is reversed.

Reversed, and judgment here for appellant.

*Reversed.*