PRATT et al. v. WEEKS et al.

District Court, S. D. Florida, Jacksonville Division.

Dec. 6, 1932.

954

Watkins, Asbill & Watkins, of Atlanta, Ga., and Walter F. Rogers, of Jacksonville, Fla., for plaintiffs.

James H. Bunch, of Jacksonville, Fla., for defendants.

STRUM, District Judge.

Following the decree of the Circuit Court of Appeals in Weeks v. Pratt, 43 F.(2d) 53, denying, without prejudice, specific performance of the contract here involved, plaintiffs instituted this suit seeking rescission and cancellation of said contract, the restitution of certain moneys advanced, and the value of services performed pursuant to said contract, and an equitable lien upon the subject-matter thereof to secure the amount decreed to be due them.

Substantially the same underlying facts appear as in the former suit for specific performance, supplemented by additional facts pertinent to relief by rescission.

During July, 1927, Weeks represented to the plaintiffs that he (Weeks) had devised an apparatus for attachment to internal combustion engines used in automobiles which would greatly increase the mileage obtained from ordinary gasoline. Weeks also represented that he had devised a new fuel for such engines, the use of which would produce results as to mileage far superior to ordinary gasoline. Plaintiffs did not rely upon these representations, however, but made numerous tests of both the supposed apparatus and supposed fuel before entering into the contract now sought to be canceled.

Weeks is a retired locomotive engineer, of very little learning or technical skill. Both the plaintiffs are men of high education, special training, and many years' experience in engineering pursuits. Plaintiff George L. Pratt is a mechanical engineer of some thirty years' experience, with many years' experience in the design, construction, and operation of internal combustion engines. Plaintiff Nathaniel P. Pratt is a mechanical engineer with years of experience in the manufacture and use of chemicals.

Weeks exhibited to the Messrs. Pratt an automobile on which he claimed his fuel-saving apparatus was installed. Mr. George Pratt, upon Weeks' invitation, fully inspected the installation on Weeks' car, satisfying himself that there was no fuel in the main tank, and no spurious means of conveying fuel to the carburetor, and that the only place from which the motor could obtain fuel was from the vacuum tank. After this, a meas-

ured "quart" of gasoline was put into the vacuum tank in the presence of Messrs. Pratt and Weeks, and the car was driven "something over forty-nine miles" before exhausting this supply. Mr. Pratt testified: "There was no effort to conceal anything; on the other hand, apparently he (Weeks) was anxious for me to make a thorough inspection, and without hesitation opened up for inspection every part of the car that I asked for."

Some time later, in the presence of Mr. George Pratt and a patent attorney who had been brought down from Washington, Mr. Weeks' appliance was removed from the car, completely disassembled, and laid out for inspection. After Mr. Pratt and the patent attorney, Mr. Parry, had inspected the apparatus to their satisfaction, it was reassembled and reinstalled, and another demonstration was had, with like results as before. These tests, according to both the plaintiffs, and others which were made, "were carefully, accurately, honestly, and intelligently made."

Mr. Weeks also exhibited to the Messrs. Pratt what he (Weeks) claimed was a fuel discovered by him which would also produce extraordinary mileage. Supposedly using this fuel, several test runs were made in ordinary automobiles belonging to persons other than Mr. Weeks and which were brought in by the plaintiffs and employed for the purpose of the tests. The results apparently obtained were approximately 60 per cent. greater with the supposed Weeks' fuel than with ordinary gasoline. The Messrs. Pratt also conducted several ignition tests of the fuel with which they were apparently content.

After these and other tests were made, the contract of September 13, 1927, was executed. The contract is executory. It is under seal, and contained covenants by which Weeks agreed to assign to the Pratts "undivided interests" in said fuel processes, the fuel-saving apparatus, and other inventions, which interests therein, together with the interest retained by Weeks, were to be later assigned to a proposed corporation. Weeks agreed to continue his study and development of the apparatus and fuel, and to disclose the details of the construction of the apparatus and the formula of the fuel when he should be requested so to do by the plaintiffs, in order that patents for the apparatus could be obtained, and so that the fuel could be further developed. The plaintiffs covenanted to advance certain moneys to the defendant Weeks, and to bestow certain labor and services in the development of the apparatus and fuel, and in securing patents for the for-

mer; the object of the contract being "for the purpose of perfecting and utilizing, and making commercially profitable, the patents, discoveries, inventions, and processes" referred to. The contract contained certain other provisions by which the plaintiffs would acquire a 49 per cent. interest in the corporation mentioned. The contract also recites: "The said Weeks, realizing the desirability of obtaining financial, technical and business assistance and co-operation in order to fully develop his ideas, has negotiated with the other parties to this contract, and they have agreed to become interested with him, and to aid him in making the discoveries, inventions, and processes available and marketable and to put them into commercial use and to realize profits therefrom."

Plaintiffs thereafter undertook to manufacture one of the fuel-saving attachments, and installed it on Mr. George Pratt's car. Although sporadic and intermittent bursts of additional power was evidenced, the apparatus produces nothing approximating the results obtained in the apparatus on Mr. Weeks' car. If Mr. Weeks has developed such an apparatus as he purported to demonstrate to the plaintiffs, he has withheld disclosure of some very important functioning part which critically disturbs its efficiency. There is no doubt that the plaintiffs have been unable to construct, with the information given by Mr. Weeks, an apparatus which would duplicate the results apparently obtained on the tests with Mr. Weeks' car.

Mr. Weeks purported to disclose what he claimed was the formula for his fuel, but the description thereof given by Mr. Nathan Pratt, and which is undisputed, approaches the fantastic. A mixture made from the supposed formula produces a liquid that will not even ignite, and is of utterly no value as a combustible fuel.

If Mr. Weeks ever had any such apparatus and fuel as he represented, he has never disclosed the construction of the former, nor the formula for the latter, as he agreed to do in his contract. Also, Mr. Weeks has never executed the assignments of an interest therein to plaintiffs as he agreed to do, and has declined to further co-operate or work with the Pratts in the further development of the supposed discoveries, and securing patents thereon, which was the whole object of the contract.

The plaintiffs have fully performed their covenants. They have advanced all sums of money they were obligated to advance. They have made faithful efforts to perfect the fuel,

and to construct and improve the apparatus and to obtain patents therefor, on such information as was given them by Mr. Weeks, but without success. After much negotiation with Mr. Weeks, and upon his failure or refusal to furnish further information, relations were finally broken off on December 26, 1927. Mr. Weeks assigned as the reason for his refusal to perform the contract that he had discovered a clause therein permitting the Pratts to withdraw upon certain conditions after notice to Weeks, but which the Messrs. Pratt had not then attempted to do, which provision of the contract Weeks claimed was contrary to his intention in executing it; also due to the fact that Mr. Weeks was of the opinion that the stock subscription recited in the proposed charter of the corporation and method of corporate organization provided for therein did not conform to the contract. The withdrawal clause objected to by Mr. Weeks, however, plainly appears in the contract as executed by him after full examination thereof, and it does not appear that the proposed charter for the corporation in anywise ran counter to the contract provision.

Defendant American Speed Corporation, to which an effort has been made to convey the patent rights, was organized by Mr. Weeks, and is but an alter ego for him. It is chargeable with knowledge of all the facts here found. This is a corporation other than the corporation contemplated in the contract between Mr. Weeks and the Messrs. Pratt.

As grounds for relief by rescission, plaintiffs rely upon: (1) Fraud on the part of Mr. Weeks in procuring the contract; (2) abandonment of the contract by Mr. Weeks, rendering further performance by plaintiffs impossible.

■ Mr. Weeks' claims were of such an extraordinary nature as to inspire most critical examination before relying upon them. The claims are such a severe tax upon credulity, and so decidedly contrary to common experience, that a person of even ordinary intelligence would have been led to make a most exhaustive test before going into the venture. Plaintiffs realized the advisability of such tests. They are highly educated and experienced engineers, fully capable of making such tests. They tested the apparatus and fuel to their satisfaction. The parties dealt at arm's length, and traded on an equal footing, unless the scientific knowledge and experience of plaintiffs put them in a superior position. Plaintiffs had equal, if not superior, opportunity to know the whole facts before they executed the contract. There was no fiduciary relation, no duress, and no mistake as that term is understood as a basis for equitable relief. In executing the contract plaintiffs acted, not upon Weeks' representations, but upon the results of their own extended investigations. Plaintiffs concede that Weeks co-operated with them in making the tests, made all disclosures demanded of him anterior to the contract, and that the tests were "carefully, accurately, honestly, and intelligently made." If plaintiffs were deceived, they were victims of their own credulity. Plaintiffs therefore will not be heard to assert fraud in procurement of the contract when they acted, not upon Mr. Weeks' representations, but upon their own extended investigations and tests which they were qualified to make, having equal if not superior means with defendant of learning the truth. 26 C. J. 1162; 13 C. J. 391.

■ The covenants of the contract, however, are mutual and dependent. That such was the intention of the parties is clearly evidenced by the following provision of the contract: "16. This is an entire contract. Each part shall be dependent upon every other part."

Whether or not covenants are dependent or independent depends primarily upon the intention of the parties. Ireland v. Craggs (C. C. A.) 56 F.(2d) 785; Sun City Holding Co. v. Schoenfeld, 97 Fla. 777, 122 So. 252. The stipulations of the parties in this respect are controlling. 13 C. J. 572. In doubtful cases, the courts are inclined to treat the covenants as dependent, since such a construction prevents one party from having the benefits of a contract without performing it himself. 13 C. J. 568.

Mr. Weeks' covenants to disclose the method of construction of his apparatus, and the formula for his fuel, to co-operate with plaintiffs, and to assign interests in the inventions, are not subordinate or incidental, but go to the entire consideration of the contract and of the covenants on the part of the plaintiffs to furnish money and to bestow their services in the perfection and patenting of these supposed discoveries. One depends upon the other; plaintiffs being unable to go forward with their undertaking unless Weeks performed his own covenants. In effect, these plaintiffs were acquiring a 49 per cent. interest in the supposed discoveries, for which they promised to advance certain moneys and to perform certain services. Plaintiffs, as far as possible, performed the things to be done on their part in reliance upon, and in con-

sideration of, the concurrent performance by Mr. Weeks of his mutual and dependent covenants to disclose and to co-operate, and to convey, all of which he has failed to do. Mr. Weeks' failure to carry out his covenants, therefore, is more than a mere breach of an independent covenant, more than a mere failure to perform a condition subsequent or a promise to perform a future act, all of which are remediable at law, but it is a failure to perform a mutual and dependent covenant which goes to the entire consideration of the contract and renders impossible further performance by plaintiffs.

Ordinarily the mere breach of a covenant in a contract is no sufficient reason for equitable intervention, in the absence of fraud in the inception of the contract, or some other recognized ground of equity jurisdiction, as in such cases there is an adequate remedy at law. Rutland Marble Co. v. Ripley, 10 Wall. 339, 19 L. Ed. 955; Blake v. Pine Mountain Iron & Coal Co. (C. C. A.) 76 F. 624, 640; Dixie Cotton Picker Co. v. Bullock (C. C.) 188 F. 921; Harrington v. Rutherford, 38 Fla. 321, 21 So. 283; 9 C. J. 1181.

 But the authorities quite generally recognize a distinction in this respect between dependent and independent covenants. Where the covenant in question is a mutual and dependent one, where what was undertaken to be performed in the future was so essentially a part of the bargain that its failure must be considered as destroying or vitiating the entire consideration of the contract, or is such an indispensable part of what the parties intended that the contract would not have been made with that condition omitted, and the parties cannot proceed without its performance, a court of equity may properly decree rescission and restitution when one party refuses to go on with the contract. Black on Cancellation and Rescission, § 212 et seq.; 13 C. J. 568 et seq.; 6 R. C. L. 860. The controlling principles are the same as those given effect in De Bisschop v. Crump (C. C. A. 5) 24 F.(2d) 807; Fisher v. Tatum Holding Co. (D. C.) 14 F.(2d) 656; Sun City Holding Co. v. Schoenfeld, 97 Fla. 777, 122 So. 252; Southern Colonization Co. v. Derfler, 73 Fla. 924, 75 So. 790, L. R. A. 1917F, 744, and Musselwhite v. Oleson, 60 Fla. 342, 53 So. 944. The subject-matter of the contracts in those cases was land; but there is nothing in the principles involved which is peculiar to land contracts alone. The principles apply as well, and perhaps, with even more force, to a contract of this character.

The sole purpose of this contract was to secure the development, patenting, and manufacture of the supposed discoveries of Mr. Weeks, to which end the disclosures and co-operation of Mr. Weeks were indispensable. When he refused to perform these undertakings, such refusal went to the very essence of the contract, and to the whole consideration thereof, and made further performance by plaintiffs impossible. See Oscar Barnett Foundry Co. v. Crowe (C. C. A.) 219 F. 450.

It is inequitable that defendant Weeks enrich himself at plaintiffs' expense by repudiating his mutual and dependent covenants, and still retain the benefits he has received from plaintiffs' performance of the contract, relegating the plaintiffs to a futile action at law to recover damages.

The defendant Weeks is insolvent. While insolvency alone is not a ground of equitable jurisdiction, it is an important consideration. " 'It is not enough that there is a remedy at law. It must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity.' The circumstances of each case must determine the application of the rule." United States v. Union Pacific Ry. Co., 160 U. S. 1, 51, 16 S. Ct. 190, 209, 40 L. Ed. 319, 336. While plaintiffs prosecute an action at law, the defendant would be free to dispose of his interests in the supposed inventions, his only asset, which he has already attempted to do, and thus leave the plaintiffs without practical or efficient remedy.

Plaintiffs therefore are entitled to equitable relief by rescission, to the cancellation of the contract in question, and restitution of moneys paid to Mr. Weeks, or otherwise reasonably and judiciously disbursed under the contract, as well as the value of any betterments to the subject-matter.

 The contract being not susceptible of specific enforcement, and plaintiffs being entitled to rescission in equity, an equitable lien may be imposed upon the subject-matter of the contract to secure plaintiffs in the restitution of the sums to which they are entitled. King v. Thompson, 9 Pet. 204, 221, 9 L. Ed. 102, 108; Jackson v. Vicksburg, S. & T. R. Co., 99 U. S. (9 Otto) 513, 25 L. Ed. 460; Everett v. Mansfield (C. C. A.) 148 F. 374, 8 Ann. Cas. 956; Chabot v. Winter Park Co., 34 Fla. 258, 15 So. 756, 43 Am. St. Rep. 192.

 Pursuant to the contract, plaintiffs advanced in money to Mr. Weeks, $13,866.66, restitution of which should be made.

Plaintiffs also paid Mr. Parry, the patent attorney, $1,730.50, restitution of which should be made. This sum is only part of the fee Mr. Parry was to receive, and plaintiffs claim to be obligated for the remainder. This remainder, however, has not been paid, nor has the amount thereof nor plaintiffs' liability therefor been established with sufficient definiteness to entitle the plaintiffs to restitution thereof from Mr. Weeks in this suit.

Other patent lawyers were employed, with the sanction of this court, to succeed Mr. Parry upon the latter's death. To the successor attorneys there may or may not be some liability on the part of the plaintiffs; but neither the amount nor the fact of liability to these attorneys are sufficiently established to entitle the plaintiffs to restitution. Moreover, these services were rendered after plaintiffs were on notice that Mr. Weeks would not go on with the contract.

Plaintiffs also claim $25,000 each for services rendered by them apparently prior to January 1, 1928, pursuant to the contract, in an effort to develop and patent the supposed discoveries, and Mr. George L. Pratt claims an additional $50,000 for other services performed for like purposes subsequent to January 1, 1928. The plaintiffs, and a corroborating witness, have testified that these sums are the reasonable value of such services. There can be no allowance of the latter, however, for the reasons hereafter stated, and also because these services were performed after plaintiffs were on notice that Mr. Weeks would not go on with the contract. Such services were therefore wholly voluntary, and with knowledge of all the facts. Plaintiffs also claim $10,000 for traveling and incidental expenses.

Plaintiffs' learning and skill are not doubted. Nor is there any doubt that they faithfully endeavored to carry out their obligations to render services.

But Mr. Weeks is under no contractual obligation to pay plaintiffs the "reasonable value" of their services in a general sense. Equity, however, upon decreeing rescission will impose the duty upon Mr. Weeks of restoring whatever of value he has received under the contract, and the value of any betterments to the subject-matter, judiciously made by plaintiffs, of which he will reap the benefit upon rescission. To this end the value of materials and services may be allowed, but not exceeding the value of the betterment to the subject-matter. Jackson v. Vicksburg, etc., R. Co., 99 U. S. (9 Otto) 513,

text 522, 531, 25 L. Ed. 460, text 464, 467; 39 C. J. 2031, 2036, 2044, 2072.

Plaintiffs have spent considerable time and money in an effort to develop and perfect the supposed discoveries of Mr. Weeks. But there is no tangible evidence that any improvement or betterment of the supposed discoveries has resulted from plaintiffs' labors, or travels, and consequently no benefits of which restitution should be required of Mr. Weeks. If plaintiffs' services had resulted in perfecting or improving the supposed discoveries, so as to constitute a betterment thereof, a different question would be presented. Plaintiffs' labors were of an experimental nature, in an effort to produce something for themselves as well as for Mr. Weeks from supposed discoveries most chimerical in nature. The efficiency and value of the supposed discoveries are still undemonstrated. If the apparatus or fuel are now any more efficient or valuable than before plaintiffs commenced their labors, there is no evidence of it.

It is true plaintiffs have aided in bringing about certain pending applications for patents, and there is no doubt they have bestowed considerable time, expense, and labor in endeavoring to procure patents, but no patents have yet been granted, and the value of these services is conjectural. There is no basis in the evidence for segregating the value or benefits, if any, of these services so as to fix the separate betterment value thereof as an element of restitution, plaintiffs' evidence being categorical as to their services as a whole; no details being given. No restitution will be decreed, therefore, for plaintiffs' services, traveling expenses, or the conjectural attorney's fees. The pending applications for patents, however, and any patents resulting therefrom, are the fruits of the joint endeavors of the parties under the contract, and, in effect, a part of the subject-matter thereof, so that plaintiffs are entitled to an equitable lien thereon to secure the amounts awarded plaintiffs.

Restitution will be decreed of the sum of $13,866.66 paid to Weeks; the sum of $1,730.50 paid to Mr. Parry, acquiesced in by Mr. Weeks, and of which he will reap the benefit, together with interest on these sums from January 1, 1928. From the total will be deducted the sum of $1,180.10, due from the plaintiffs to the defendant as costs of the former appeal herein which went against the plaintiffs, together with interest on said sum from the date of the mandate in the former appeal. To secure restitution of the net

amount, an equitable lien will be awarded on the pending patent applications and upon any patent rights resulting therefrom.

Decree accordingly.