Manuel ALEGRE, Appellant,

v.

MARINE MOTOR SALES CORPORA-
TION, Debtor, Appellee.

No. 15571.

United States Court of Appeals
Fifth Circuit.

Jan. 17, 1956.

Wm. Alonzo Carter, Jacksonville, Fla.,
Adair, Ulmer, Murchison, Kent & Ash-
by, Jacksonville, Fla., of counsel, for ap-
pellant.

Harry B. Fozzard, Tom B. Stewart, Jr., Jacksonville, Fla., for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

The appellant petitioned the court, praying in the alternative that the trustee be directed to disclaim any right, title or interest in or to the oil screw Nazare II, or to pay to the appellant the amount of a judgment he had obtained against the debtor in a Florida state court before making any distribution to creditors, or that the vessel be sold under the supervision of the bankruptcy court and the appellant be allowed a credit of the amount of said judgment on any bid made by him at such sale. The referee ruled that the appellant had an equitable lien upon the vessel to secure the payment of $16,355.79, with 6% interest thereon from April 23, 1954. On petition for review that order of the referee was reversed and set aside by the court, the court holding: "I consider the judgment creditor, Alegre, to stand on the same level as other common creditors, and that the vessel Nazare II is among the assets of the debtor's estate free of any claimed lien by Alegre." This appeal followed.

The facts as set forth in appellant's petition were not controverted and appear to be without dispute. The debtor entered into a contract with appellant for the construction by the debtor, as contractor, for the appellant, as owner, of a shrimp trawler in accordance with specifications and descriptions set forth in the contract. While such construction was in progress, the appellant advanced to the debtor the sum of $16,000.00 and installed in the trawler certain equipment of the value of $355.79. The trawler was completed on or about March 9, 1954, and the debtor and the appellant caused it to be duly licensed and enrolled as the oil screw Nazare II in the name of the appellant in the United States Customs House, Brownsville, Texas, on or about March 14, 1954. Further pursuant to an agreement between the debtor and the appellant, appellant then executed and recorded in said Customs House a mortgage upon said vessel to the Pan American State Bank of Brownsville, Texas, in the amount of $21,000.00 to secure a loan made by said Bank to appellant. At all times since March 14, 1954 and up to the time of the hearing of appellant's petition, the vessel had been registered and enrolled in the name of the appellant, and the appellant remained in possession of the consolidated certificate of enrollment and license of the vessel until the deposit thereof in the Florida state court, as hereinafter described.

In the month of April, 1954, the appellant conditionally rescinded the said contract with the debtor on account of breaches of said contract by the debtor, repaid the loan made to the appellant by said Pan American State Bank, secured and recorded in the Customs House at Brownsville, Texas, a satisfaction of said mortgage; and tendered to the debtor said consolidated certificate of enrollment and license, together with a duly executed bill of sale sufficient to vest title of said vessel in the debtor, said tender being conditioned upon restitution by the debtor of the aforesaid amounts advanced by the appellant. The debtor refused to accept title to said vessel so tendered, and refused to refund said advances, and the appellant then instituted a common law action in the Circuit Court of the Fourth Judicial Circuit of the State of Florida in and for Duval County [1] against the debtor, alleging the aforesaid rescission and making a continuing tender of said title documents conditioned upon restitution being made of said advances.

In said action, the debtor filed an answer denying the appellant's asserted right to rescind said contract and a counterclaim asserting a lien on said vessel. On November 26, 1954, before the filing of the debtor's petition herein,

1. A state court of general jurisdiction.

said State Circuit Court entered a judgment on said action recognizing the appellant's right to rescind said contract and providing in terms hereinafter quoted, that the appellant have and recover of the debtor the aforesaid sum of $16,355.79, together with interest at 6% per annum from April 23, 1954, and the costs of said proceeding; and, also, ordering the appellant to deposit with the clerk of said State Circuit Court the aforesaid title documents, to be delivered to the debtor upon payment of the amount of said judgment, otherwise to be disposed of as might be thereafter ordered by said Court. The appellant deposited said title documents as directed. Five days later, the debtor filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq.

 Whether the contract be considered one for the construction of the vessel or for its sale, the appellant was entitled to be put in statu quo when the contract was properly rescinded by him or by the court on his application.[2] As said by the Supreme Court of Florida in McDonald v. Sanders, 103 Fla. 93, 137 So. 122, 125:

> "Where there has been a total or partial payment of the purchase price by the buyer, the buyer may not be required to show an unconditional return of the property as a prerequisite to rescinding the purchase, where the seller has refused to accept the buyer's offer to return."

██ There is considerable doubt as to whether appellant's more appropriate remedy might not have been by bill in equity for rescission and for the fastening of an equitable lien on the vessel,

the distinction between legal and equitable remedies being fully recognized in Florida. 1 Fla.Jur., Actions, § 11, p. 136 et seq. While the precise question here presented has not been passed on by the Florida courts, the courts of other states, which recognize the distinction between law and equity, have enforced in common law actions the right of rescission of a contract of sale conditioned on the seller returning to the buyer the part of the purchase price which he had paid.[3]

Apparently, the Florida Circuit Court was following that principle, when, after entering judgment for the appellant against the debtor, it added the following paragraph:

> "It Is Further Ordered that the Plaintiff do forthwith deposit with the Clerk of this Court the Consolidated Enrollment and License of the Oil Screw Nazare II, Official Number 267175, which was tendered by the Plaintiff in open court, and the Bill of Sale of said vessel from the Plaintiff to the Defendant, which was also tendered by Plaintiff in open court, to be delivered by the Clerk to the Defendant upon payment to the Plaintiff or to his attorneys of record herein of the amount of the foregoing Judgment, otherwise to be disposed of as may be hereafter ordered by the Court."

 It does not appear that any appeal was taken from the judgment of the Florida Circuit Court. That Court had acquired jurisdiction of the parties and of the subject matter. If possible, its judgment should be so construed as to give effect to every provision thereof, and that part of its judgment heretofore quoted should not be held null and void on collateral attack.[4]

---

**2.** 77 C.J.S., Sales, § 117; 46 Am.Jur., Sales, § 767, notes 6 and 7; § 670; Restatement Contracts, § 480(3); 3 Williston on Sales, Rev. ed., §§ 610, 649.

**3.** See Eagan Co. v. Johnson, 82 Ala. 233, 2 So. 302, 304; Jesse French Piano & Organ Co. v. Bradley, 138 Ala. 177, 35 So. 44, 45; Continental Jewelry Co. v. Pugh Bros., 168 Ala. 295, 53 So. 324,

326; Southern Iron & Equipment Co. v. Bamberg, E. & W. Ry. Co., 151 S.C. 506, 149 S.E. 271, 280; Davis v. Ross, Miss., 45 So.2d 273, 274; 3 Williston on Sales, Rev. ed., § 649.

**4.** Cf. In re Begg's Estate, 152 Fla. 277, 12 So.2d 115; Keen v. State, 89 Fla. 113, 103 So. 399, 400; State v. Sullivan, 95 Fla. 191, 116 So. 255, 263.

It seems to us that legal effect is given to that part of the judgment heretofore quoted, when we hold that, under that judgment, the rescission did not become fait accompli until the debtor paid the amount adjudged against it. Such holding is peculiarly justified when the judgment is construed in connection with the consistent efforts of the appellant to make his tender conditioned upon restitution by the debtor of the amounts advanced by him, and to keep good in court only that kind of conditional tender.[5]

The judgment is, therefore, reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

JONES, Circuit Judge (dissenting).

I cannot agree with the majority, partly because I do not see the facts as the majority sees them, and partly because I cannot agree that the majority has made a proper application of the law. The majority takes the facts from the petition of appellant as filed in the District Court and says that the facts so recited appear to be without dispute. I cannot indulge in some of the inferences which the majority seems to draw from the petition.

The majority assumes that the title to the vessel was in appellant, the purchaser, prior to his rescission. If so, it could only have been vested in him pursuant to the licensing and enrolling of the vessel in appellant's name. "Unless otherwise agreed, a contract to build a vessel, the builder to furnish the principal part of the material, generally does not vest any property in the party for whom it is agreed to be constructed during the progress of the work, nor until it is finished and delivered, or at least ready for delivery and approved by such party." 48 Am.Jur. 53, Shipping § 63. The construction contract is not before us and we are denied the benefit of its terms in ascertaining whether or not title passed. The petition from which the majority finds the facts says that "pursuant to agreement" the appellant put a mortgage on the vessel. The enrollment of the vessel may be prima facie evidence of title but it is not ownership of itself nor conclusive evidence. See 48 Am.Jur. 51 et seq. Shipping § 62. Yet it seems the majority treats it as a title. If we rely upon the prima facie evidence of title, then what effect are we to give the recital that the mortgage was given "pursuant to agreement"? Perhaps it means that the appellee was to waive a vendor's lien. Is it not as reasonable to suppose that it was intended that title should not pass until the vessel was delivered or ready for delivery and approved? Ought this court reverse where it must conjecture the meaning of agreements which are not before the court otherwise than by a recital in a pleading? If title had passed why was the agreement of the appellee necessary to the placing of a mortgage? If the appellee had a vendor's lien when and how was it lost? The majority, in taking its facts from appellant's petition, might have given consideration to appellee's objections to the petition. There the appellee said "the ownership of the vessel is in the debtor [appellee] but evidence of legal title is in the petitioner [appellant]. True, this may be an unsupported and unproved conclusion, but so also, it seems to me, are some of the allegations of the petition upon which the majority places reliance.

In his petition, the source of the facts upon which the majority opinion is based, the appellant asserted that he had title to the vessel, or in the alternative, that he had a lien upon it. The District Court held that he had neither. Is the District Court, upon a remand, to determine which he had, and if so, is it required or permitted to take testimony?

Is this court, by the opinion of the majority, deciding that the direction in

---

5. See 46 Am.Jur., Sales, § 767, n. 6 & 7, § 670, § 775, p. 907, n. 6; 52 Am.Jur., Tender, § 25, n. 19, § 33; 86 C.J.S., Ten-der, § 32, notes 9, 10 & 11; 77 C.J.S., Sales, § 107, note 5, p. 816.

the state court judgment for the deposit with the clerk of documents shall be construed as the reservation or vesting of title, or the declaration or creation of a lien? So it seems. I submit that if the judge of the state court thought his court had such power and he intended that it should be exercised, the judgment would have had something to say regarding title or lien and not have been confined to a direction regarding documents. For aught that appears the proviso of the judgment may have been for the benefit of the judgment debtor, the appellee here.

The appellant rescinded the contract. The majority says he "conditionally" rescinded the contract. The petition, the source of the facts as ascertained by the majority, says that the appellant "rescinded his aforesaid contract" and tendered title papers and a bill of sale to the appellee, which tender was conditioned upon repayment of the appellant's advances. The rescission was, I think, unconditional. The rescission was of the construction contract because of a breach. There was no factual averment that there had been a completed sale which appellant sought to rescind. To be sure the appellant said in his petition that the documents conditionally tendered were sufficient to revest title to the vessel in the appellee, but such statement is by way of a conclusion and hardly adequate to serve as an averment that title had ever passed to appellee.

The majority says that the part of the state court judgment directing the deposit of the title documents with the clerk should not be set aside on collateral attack. The District Court did not, in my reading of the record, decline to give effect to the state court judgment. In the memorandum filed with the District Court order the District Judge said:

"The Referee's decision as to the third matter presented, his denial of the debtor's prayer that Alegre be required to deliver up to the Referee the bill of sale, certificate of enrollment and license of said vessel is eminently correct. The record shows that these papers are held in the custody of the State Court under a judgment of that court which stands unimpeached. Any proceedings for their recovery belong in that court * * *."

The foregoing is not the language usually used in sustaining a collateral attack on a judgment. It is urged by appellant that the state court, in its judgment, recognized an equitable lien. I find no suggestion by appellant that the state court attempted or intended by its judgment to create or impose any lien. My understanding of appellant's position is that he has an equitable lien to secure the return of his payment and advances by reason, and solely by reason, of being a rescinding vendee of personal property. In the District Judge's memorandum from which we have heretofore quoted he states that appellant, in his argument conceded that the state court judgment did not create a lien, but that a lien had existed since rescission.

In appellant's brief it is said that the leading case in Florida on the nature of equitable liens is Jones v. Carpenter, 90 Fla. 407, 106 So. 127, 129, 43 A.L.R. 1409. This was a case for the foreclosure of a lien on real property. Among the equitable liens mentioned by the court is the vendor's lien. In Jones v. Carpenter it is said:

"The equitable lien differs essentially from a common-law lien; the latter being the mere right to retain possession of some chattel until a debt or demand due the person thus retaining it is satisfied; possession being such a necessary element that if it is voluntarily surrendered by the creditor the lien is at once extinguished, while in the former or equitable lien possession remains with the debtor or person who holds the proprietary interest. Jones on Liens (3d Ed.) vol. 1, 26; Pomeroy's Equity Jurisprudence (4th Ed.) vol. 3, 2958; 17 R.C.L. 605.

"From the foregoing it is seen that equitable liens arise from two sources, viz.: (1) A written con-

tract which shows an intention to charge some particular property with a debt or obligation; (2) is declared by a court of equity out of general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings in the particular case."

In a case decided but a short time subsequent to Jones v. Carpenter the Supreme Court of Florida had occasion to announce the following rule:

"The existence of a vendor's lien rests not in any rule of the common law, but is exclusively a doctrine of equity adopted, it has been said, from the civil law which applied to the sale of both real and personal property—which rule courts of equity adopted only so far as it applies to realty, but did not adopt it as applied to sales of personalty. So a seller of personal property has no lien for the price of the articles sold after the delivery of possession." Malone v. Meres, 91 Fla. 709, 109 So. 677, 692.

If a vendor of personal property, being without possession, has no equitable lien for the purchase price, it would seem to follow that a rescinding vendee, without possession, would have no equitable lien unless imposed or declared by a court of equity.

The decided case which is perhaps more nearly in point than any other is from the Mississippi Supreme Court and involved the sale of a cash register. In discussing the right of a vendee of personal property to assert a lien on the subject matter of the sale after rescission, the court said:

"We think, however, that there was no common-law or other lien upon the cash register in favor of the buyer. To disaffirm or rescind the contract for misrepresentation the buyer would have to tender the cash register back to the seller, and he could enter suit for any amount paid the seller under such contract. We know of no statute giving a lien

in a case of this kind, and certainly none exists under the common law." National Cash Register Co. v. Hude, 119 Miss. 36, 80 So. 378, 7 A.L.R. 990.

As said by the majority, the state court judgment was entered in a common law action. The Supreme Court of Florida has noted that:

"There is still maintained in this state virtually the same sharp distinction between common law courts and courts of equity that existed in England prior to 1776." Strong v. Tedder, 143 Fla. 473, 196 So. 829, 830.

It would be well perhaps to consider the extent to which distinctions between common law and equity, between legal and equitable remedies, and between legal and equitable forms of action are recognized. A recently published treatise on Florida law has the following discussion:

"It is important for many reasons to determine whether an action is legal or equitable. This may, for instance, determine the method of review, or establish the right to a jury trial. Furthermore, many procedural rules are applicable solely to actions of law while others are applicable only to suits in equity.

"Originally, actions at law and suits in equity were administered in different courts. Common law causes of action were enforced in common law courts and by means of common law forms of action, whereas causes of action existing in equity were enforced by courts of equity and by means of equitable forms of action. However, courts of equity as separate tribunals have ceased to exist, although separate dockets are maintained. Nevertheless, the demarcation between courts of equity and law and their respective fields of operation are preserved. A court of equity may not, for example, enforce the penalty of an indemnity bond unless the bond is accompanied by some circumstance which would

inject into the cause a matter of equitable cognizance to which recovery on the bond would be incidental.

"Many actions are readily classifiable as legal or equitable; yet there is no general test that can be applied in all cases. In general, a case is equitable only when some remedy is sought which equity alone can give, such as cancellations of a deed, or when some right is established which equity alone will recognize. In the final analysis, the difference between an action at law and one in equity lies largely in the mode of relief granted. If the purpose of the action is to recover a sum of money or damages, the action is clearly one at law. On the other hand, if the pleadings present issues of equitable cognizance it is a proceeding in equity." 1 Fla.Jur. Actions § 11, p. 136 et seq.

The state court action was for the recovery of a money judgment. The record before us does not indicate, and I am unwilling to assume, that any other relief was sought. If it be necessary to determine whether other relief was prayed the District Court should make the finding. This Court, in deciding an appeal from the Southern District of Florida, has said:

" 'Where an action is simply for the recovery * * * of a money judgment, the action is one at law.' " Central Florida Lumber Co. v. Taylor-Moore Syndicate, 51 F.2d 1, 3.

So also this court has said in another appeal from the Southern District of Florida:

"A case is equitable only when some remedy is sought which equity alone can give, or some right set up which equity alone will recognize. No relief is here prayed, save a money judgment." American Cyanamid Co. v. Wilson & Toomer Fertilizer Co., 51 F.2d 665, 668.

In the memorandum of the District Judge he stated:

"Concededly, equity courts may declare the existence of an equitable lien in favor of the vendee of real property, and in a proper case no doubt could decree the existence of and enforce such a lien in favor of the vendee of personal property. Equity powers are broad, and equity courts are traditionally ingenious in improvising appropriate remedies. However, I am by no means persuaded that such liens come automatically into being, ready for enforcement, at the precise moment that· a vendee declares a contract for the purchase of personal property rescinded, with attendant priority from that date. To the contrary, they can result only from the judicial process, after full hearing."

The District Judge was formerly a judge of the Florida Circuit Court and had a wide experience respecting the jurisdiction of the courts of that state. Both precedent and principle, in my opinion, support his view.

The District Court for the Southern District of Florida had a prior occasion to discuss the equitable lien doctrine and in so doing used in its opinion the following language:

" ' "It is not enough that there is a remedy at law. It must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." The circumstances of each case must determine the application of the rule.' United States v. Union Pacific Ry. Co., 160 U.S. 1, 51, 16 S.Ct. 190,·209, 40 L.Ed. 319, 336. While plaintiffs prosecute an action at law, the defendant would be free to dispose of his interest in the supposed inventions, his only asset, which he has already attempted to do, and thus leave the plaintiffs without practical or efficient remedy.

"Plaintiffs therefore are entitled to equitable relief by rescission, to the cancellation of the contract in question, and restitution of moneys paid to Mr. Weeks, or otherwise reasonably and judiciously dis-

bursed under the contract, as well as the value of any betterments to the subject-matter.

"The contract being not susceptible of specific enforcement, and plaintiffs being entitled to rescission in equity, an equitable lien may be imposed upon the subject-matter of the contract to secure plaintiffs in the restitution of the sums to which they are entitled." Pratt v. Weeks, D.C.S.D.Fla.1932, 1 F.Supp. 953, 957.

The opinion in Pratt v. Weeks was written by the late Louie W. Strum, later to become a distinguished judge of this Court and who, as a justice of the Supreme Court of Florida, had participated in deciding Jones v. Carpenter, supra, Malone v. Meres, supra, and Leesburg State Bank v. Lyle, infra. In the case before us it might be said that there were equitable grounds on which appellant could have sought equitable rescission and the imposition of an equitable lien as was done in Pratt v. Weeks. But the appellant did not do so. Having proceeded successfully on the common law side of the court and elected a remedy there available to him he should find himself without the relief which, under Florida practice, could only be granted in a suit in equity. The majority of this Court has "considerable doubt as to whether appellant's more appropriate remedy might not have been by bill in equity for rescission and for the fastening of an equitable lien on the vessel." This is in accord with the expressed and hereinbefore quoted views of the District Court. But, says the majority, in the courts of other states which recognize the distinction between law and equity, rescission has been recognized in common law actions and this statement is followed by citations to decisions of courts of jurisdictions other than Florida. An examination of the opinions in each of the cases will, I think, show that the plaintiff brought an action for the purchase price of some item of property sold, sometimes on a promissory note or accepted bill of exchange. In each of the cases it will appear, I believe, that the rescission or lien was asserted by the defendant. Such is in keeping with the law of Florida. The right to interpose equitable defenses in common law actions is recognized, but such defenses are restricted to negative defenses and cannot be made the basis for affirmative relief. City of Stuart v. Green, 156 Fla. 551, 23 So.2d 831; White v. Crandall, 105 Fla. 70, 137 So. 272, 143 So. 871.

The majority holds that the rescission did not become fait accompli until the debtor paid the amount adjudged against it. Does this mean that the appellant had title and that there was no rescission until payment of the judgment? If so, then, I submit, we have a judicial rescission in a common law action. The rule in Florida has been thus stated:

"In view of the many distinctions between actions at law and suits in equity it should be borne in mind that rescission and cancellation of an instrument are matters of equity jurisdiction and may not be obtained in a court of law." 5 Fla.Jur. 200, Cancellation Reformation, Etc. § 4, citing Leesburg State Bank v. Lyle, 99 Fla. 535, 126 So. 791.

I cannot avoid the conclusion that the rescission which the state court recognized became effective upon the giving of notice of rescission and title to the vessel if not theretofore vested in the appellee then became vested in it. I would not indulge in any assumption that the judge of the Florida court believed, the Florida law being as it is, that he was either determining or decreeing the transfer of title to an enrolled vessel by a direction to deposit documents with the clerk of the court.

The majority apparently rejects appellant's lien theory and so must, although not saying so, adopt his title theory. If the appellant is to have the vessel ought he not pay for it? The judgment was for advances "on account of the purchase price" which suggests there was more to be paid. The mortgage given "pursuant to agreement" was for $21,000 suggesting a value, and perhaps a price of or

in excess of that amount. The majority would put the appellant in statu quo. It is to be hoped that the proceedings not inconsistent with the majority opinion will permit a determination of the amount which the appellant should pay appellee as a condition to his right to possession of the vessel. The majority would not, I am sure, countenance any unjust enrichment of appellant by permitting him to take the vessel at the amount of the judgment if, in fact, the contract was for a greater sum and if the vessel had a greater value. But the amount of the contract and the value of the vessel are not among the uncontroverted facts of the appellant's petition in the District Court.

I am of the opinion that the judgment of the District Court was in all respects correct and that it should have an affirmance by this court.