Alice H. Beekner, *et vir,* Appellants, v. L. P. Kaufman, Inc., and Peter P. Cappel, Appellees.

198 So. 794
Division A
Opinion Filed November 22, 1940

*G. H. Martin,* for Appellants;

*McCune, Hiaasen & Fleming* for Appellee Peter P. Cap-

pel, and *Curtis Byrd* and *Hugh Lester,* for Appellee L. P. Kaufman, Inc.

THOMAS, J.—The appellants, Alice H. Beekner and Harry C. Beekner, and the appellee, Peter P. Cappel, were defendants in a suit instituted by the appellee, L. P. Kaufman, Inc., to foreclose a mortgage.

Because there may be confusion in referring to the parties according to their status in the lower court due to the fact that one of the mortgage holders was a defendant there and is an appellee here, we will use the titles by which they are designated in this Court.

The bill contained allegations of the following transaction: In 1925 appellants delivered to appellee Cappel and a bond and mortgage company a mortgage to secure a debt of $35,000 evidenced by eight promissory notes. The same year one note of $8,750 due four months after date, with interest at the rate of 8 per cent, was delivered to each of the mortgagees as substitutes for the original ones. The following year the bond and mortgage company transferred its note and its interest in the mortgage to a bank which the following year assigned the note and corresponding interest in the encumbrance to another bank. In 1933 the note of the bank and the proportionate share of the mortgage became the property of the liquidator of the last assignee who transferred them to Alropa Corporation. In 1937 this owner sold its interest to appellee Kaufman. Cappel did not dispose of his share.

As will be seen, there were no peculiar features of the loan ascertainable from the bill of complaint. It is when we examine the answer of Cappel, and later of the mortgagors, that there are revealed the irregularities which give rise to the questions inbedded in the briefs.

Cappel alleged that a certain negotiator of loans approached him about making one to appellants and suggested

that he lend $12,500, payable in sixty days, and reported that the bank would do likewise. The agent thereupon arranged for the loan and although but $25,000 was advanced, notes for $10,000 in excess of that amount were executed. In this answer, filed, it should be noted, nearly thirteen years later, appears the significant statement that the pleader "remonstrated against the taking of notes in said amount, when the same were tendered to him, and . . . directed said (agent) to procure other notes in the proper amount of $25,000; that this the said (agent) failed to do . . ." Then followed the allegation that this payee had at all times been ready to surrender "all of said notes" upon being paid $12,500, and had repeatedly requested the agent to "arrange said matter on said basis."

Here is the first introduction of usury into the controversy and is made by one of the original mortgagees. This appellee denied that he had ever received any substituted notes for the notes first given him. He admitted receiving a payment of $2,500 for which he had given credit.

Answer appellants. They needed cash and applied to the bank, which was one of the original payees, for relief. This institution agreed that it and its client Cappel would provide the money upon payment of a bonus of $10,000 in addition to the charge of 8 per cent for interest. The loan was consummated on those terms. Before the notes became due, the payees asked for and received eight substitute notes aggregating $35,000.

Thus, the defense of usury is definitely presented by these appellants. They set up payment also, but in indefinite language, alleging that a large sum of money was delivered, "the exact amount of which" or the date they could not recall, and that this "fully or approximately" paid the notes held by defendant Cappel and left a balance on the other notes of $8,750 "as defendants now recall." The appellants

denied any representation of them by the agent or any effort by Cappel to purge the loan of its usurious taint.

The appellee, Cappel, claimed payment of the amount found due him, but only on the basis that the original amount extended by him was $12,500. The appellants charged usury because interest of more than 25 per cent was exacted and that the principal and interest were forfeit. They sought no recovery, however, from the appellees.

The appellants present three questions for our consideration. One of them involves the propriety, under circumstances reflected by the bill and answers, of usury as a defense particularly where no affirmative relief is sought. The others present the correctness of the court's findings on the evidence but in view of the appellant's position that they ask for no relief against the appellees save the dismissal of the bill, we see no necessity for passing upon any matter presented except the availability of the defense that an exorbitant rate of interest was charged in violation of law. Sec. 6942 (4855) C. G. L. 1927.

It seems fitting to set forth now some of the observations in the opinion of the chancellor. He wrote: "All parties admit that the original contract is infected with usury." That is our understanding both from the briefs and the arguments we have heard. He continued that he was of the "opinion, however, that the forfeiture of usury statute is barred by the two-year statute of limitations"—and cited Hagan v. Neeb, 105 Fla. 297, 140 So. 916, and Jones v. Hammock, 131 Fla. 321 179 So. 674, but he also held that the defense was not lost by laches. McMahon v. Parker, 138 Fla. 772, 190 So. 247.

Concisely stated, the question is: Should the defense of usury as defined in Section 6942, C. G. L., be denied because of the provisions of Section 4663, C. G. L.?

The appellees do not take the position that statutes of

limitations are applicable to pure defenses, but insist that under the law on which appellants rely "they must ask for a forfeiture or penalty," and that a simple defense of usury is not, therefore, pleadable. With those statements as a premise they urge that in the asking appellants would run afoul of the statute of limitations, and their effort to defeat the suit of necessity fail.

From our analysis of the answer it will be apparent that no affirmative relief was sought even if it might have been appropriately demanded. We have the view that appellants were not compelled under the Act to ask for recovery and that they were justified in resorting to it as a "shield" as well as a "sword." Mortgage Securities Corporation v. Levy, 11 Fed. (2d) 270.

The charge of excessive interest on loans has been recognizes as a defense to be tested and weighed the same as other defenses. Sullivan v. Thumm, 101 Fla. 1412, 136 So. 439.

We are not deciding, because not requested to do so, whether the appellants could have prevailed had they attempted to obtain affirmative relief instead of merely defeating recovery by the appellees, but we do not hesitate to say that the latter were the movants and that they should not be encouraged in the position that their usurious contract was free of the infirmity of usury because the statutory period, within which the former could have commenced suit, had elapsed. As one writer (Webb on Usury, cited in Sullivan v. Thumm, *supra*) has observed, a contrary holding would enable the lender to purge a usury-infected contract by the simple process of awaiting the running of the statute of limitations before bringing his suit. This view, regardless of the nicety of pleading, is strengthened by the general proposition that a defense should be as long-lived as a cause of action, a principle involved in the case of Payne v.

Nicholson, 100 Fla. 1459, 131 So. 324. There it was held that recoupment was available to a defendant 'tho he was barred by the statute of limitations from commencing an action to enforce his claim. This rule in law would not be more generous in its effect than a similar one in equity. The maxim: *"Quae sunt temporalia ad agendum sunt perpetua ad excipiendum"*—seems applicable.

Much emphasis is given by appellees to two former decisions of this Court: Hagan v. Neeb, 105 Fla. 397, 140 So. 916, and Jones v. Hammock, 131 Fla. 321, 179 So. 674, cited by the chancellor as authority for his ruling. We have examined these opinions and are unable to find in them support for the appellees' contentions. The former contained the statement that no question of the effectiveness of the statute of limitations was involved and reversed the decree which adjudged that certain payments would not be forfeited because barred by lapse of time. The latter dealt with a suit in equity by the borrower for the cancellation of a mortgage claimed usurious and the question of the application of Section 4663 was not decided, the Court observing that "these considerations indicate that there is a showing of gross laches."

Having arrived at the conclusion that the appellants could avail themselves of the defense of usury and it being well established that this infirmity was present and the appellants having conceded that they sought nothing except to defeat the bill, it would be futile to use time and space in a discussion of the evidence on the matter of payment; therefore, the cause is reversed with directions to dismiss the bill, the chancellor to tax the costs as he shall think just.

Reversed.

TERRELL, C. J., and BUFORD, J., concur.

BROWN, J., concurs in opinion and judgment.

158

Justices WHITFIELD and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.