CITY OF STUART v. GEORGE W. GREEN and OSCEOLA GOLF CLUB.

23 So. (2nd) 831

November 16, 1945

Rehearing denied Dec. 17, 1945

June Term, 1945

En Banc

*Milam, McIlvane & Milam* and *Michael G. Littman,* for appellant.

*Carrol Dunscombe* for George W. Green and *T. T. Oughterson* for Osceola Golf Club of Stuart, Florida, Appellees.

THOMAS, J.:

We are reviewing an order of the chancellor dismissing, without leave to amend, a bill of complaint brought by ap-

pellant to restrain an action on the part of appellee, George W. Green, to enforce payment of promissory notes he holds, which were executed by appellant to appellee, Osceola Golf Club, and to recover from the latter the amounts paid for interest and in reduction of principal.

The background of the instant suit and the one attacked by it may best be unfolded by summarizing the allegations of the bill of complaint. The notes were made by City of Stuart to Osceola Golf Club in 1926 as part payment of the purchase price of land to be used as a "Baseball Park, Athletic Field and Fair Grounds." Each was for $5,000, and they were payable one, two, and three years after date. Five thousand dollars was paid in cash, and subsequently the maker paid approximately $4,000; so the amount sought from Osceola Golf Club, the original payee, is about $9,000.

The description in the deed, quoted in the pleading, is obviously defective. The starting point is certain, but no area of land is defined, for from there the boundary line ran S. 42° 04' 45" E. 779.17 feet; N. 47° 50' 30" E. 429.5 feet; N. 42° 09' 30" E. 1252.36 feet; S. 30' E. 638.33 feet.

The grantor was repeatedly requested to deliver a corrective deed, but this was never done.

At the time of the negotiations and consummation of the sale a stockholder of Osceola Golf Club was serving on the city commission, which, plaintiff charged, constituted a violation of Section 13, Chapter 11214, Laws of Florida, Special Acts of 1925 (the city charter) and Section 7470 C. G. L. 1927 (now Section 839.07, Florida Statutes, 1941, and F.S.A.) and rendered the transaction void. It was averred to have been illegal also because it violated certain other sections of the charter act, the Florida Constitution, and the Compiled General Laws, 1927.

Many attempts by the city to undo the transaction by exchanging its quit claim deed for the notes failed, and then the city refused to make further payments and authorized the city clerk to demand refund of all sums that had been paid.

After maturity of the notes Osceola Golf Club transferred them to appellee, George W. Green, its principal stockholder and director, who, so it was alleged, was entirely familiar with

the original sale and all negotations since. Subsequent to the purchase of the notes by George W. Green, but before his suit to enforce payment, the property in question was sold for taxes and tax deed issued to Osceola Golf Club.

So, contended the city, the transaction was void, and the city should be relieved of all liability to the endorsee and should recover from the payee the sums already paid.

The able chancellor considered the bill of complaint devoid of equity for the reasons, stated in the final order, that (1) the transaction had been validated by Chapter 14407, Laws of Florida, Acts of 1929; (2) the city had been guilty of laches; and (3) the court was bound by a decision of the United States Circuit Court of Appeals, Fifth Circuit, reported in 81 Fed. (2nd) 968 (Green v. City of Stuart), "holding that the transaction in question was legal and valid."

We shall study and discuss the reasons assigned by the chancellor in inverse order, and in that fashion attempt to decide the questions posed by appellant. If he was correct in his view that the matter had been determined by the federal court adversely to the appellant's position and that he was bound by that adjudication, then there would be no occasion for us to explore the law on the matters of laches and the efficacy of the validation act. It is quite true that United States Circuit Court of Appeals, Fifth Circuit, in reversing a judgment of the United States District Court for the Southern District of Florida held these very notes enforceable, notwithstanding one of the city commissioners was a stockholder of payee, because after the stockholder ceased to be a commissioner the governing body had resolved the notes valid and because the debt had been validated by the legislature. This conclusion was reached despite the imperfect description. Parenthetically, we may say that the matter of ratification by act of the commission, at a time when the stockholder-commissioner was no longer connected with the commission, is not presented in the bill in the present case, though it did appear from the evidence considered by the federal trial and appellate courts.

But we cannot stop here, even having, as we do, profound respect for that eminent body, for in a subsequent case, City

of Stuart v. Green, 5 Cir., 91 Fed. (2nd) 603, the same tribunal decided that the district court, whose judgment had been reversed, had no jurisdiction in the first place; so the cause was remanded and dismissed. We agree with appellant that if the trial court had no jurisdiction the appellate court had none, and the first opinion loses its effectiveness by reason of the second. Certainly, had the circuit court of appeals been presented a challenge to the jurisdiction in the first instance, the matter would have been concluded then and there without any excursion into the merits.

So we proceed to an examination of the points relative to laches and ratification, feeling that neither the chancery court nor this court is bound by the first expression of the circuit court of appeals, but we shall not meanwhile ignore the opinion nor render ourselves impervious to its persuasive influence.

It is appellant's position that the policy of the law forbids invoking the doctrine of laches against municipalities, statutes of limitations not being applicable to them, Section 95.02, Florida Statutes, 1941, and F.S.A., and there being a kinship between limitations of actions at law and the doctrine of stale demand in equity. See Norris v. Haggin et al., 10 S. Ct. 942, 136 U.S. 386, 34 L. Ed. 424; City of Port Tampa v. Hillsborough County, 102 Fla. 968, 136 So. 723. In support of this view we have been referred to the case of Common School Dist. No. 61 in Twin Falls County v. Twin Falls Bank and Trust Co., 50 Ida. 711, 4 Pac. (2nd) 342, where it was held on authority of many decisions from other states that "the doctrine is . . . well settled that no laches can be imputed to a municipal corporation, acting, as it is in this case, in a public and *governmental capacity.*" Italics ours. Whether the rule is appropriate when a city acts in a *proprietary* capacity we need not determine, for we think the presence or absence of laches in the current case may be settled on the circumstances peculiar to it.

It will be recalled that the holder of the notes received them after maturity; that he was at relevant times aware of the original sale and subsequent negotiations; that he was director of the payee corporation and its principal stock-

holder. The execution of the notes was inextricably a part of the transaction now attacked.

We have said repeatedly that laches must be tested by the facts of the particular case, that it does not depend merely upon the lapse of time. Eighteen years have passed since the transaction under examination was consummated. Even so, it is the same notes then given upon which suit now pends, and any defense to them is still available. Beekner et vir v. L. P. Kaufman, Inc., et al., 145 Fla. 152, 198 So. 794. This thought. that defenses existed notwithstanding the lapse of years, must have been entertained by appellee George W. Green when he asserted in his brief that appellant should have filed an equitable plea instead of instituting a separate suit.

In passing, we may say that an equitable plea could have been interposed in the common law suit, but it could have served only as a negative defense and not as basis for affirmative relief. Also, in the assault on the original transaction and the attempt to retrieve sums paid before the present holder obtained the instruments the payee, a new party, was joined as defendant. This is an added reason why an equitable plea would not have sufficed. Such is the law clearly set forth in Pepple v. Rogers, 104 Fla. 462, 140 So. 205.

This controversy involves several thousands of dollars of public funds. It constitutes a challenge to the conduct of a public official who is said to have held the dual place of commissioner charged with responsibility to the people and stockholder in a private corporation with which the city at the time dealt. It presents a question whether $9,000 should be repaid to the city and whether the city should disgorge many thousands more—all for a piece of land that is utterly incapable of being located by the description in the deed. It would not seem to us fair that in the fact of all these circumstances the city should be barred by procrastination while the holder of the notes proceeded, unheeded and unhampered, to collect. We cannot agree that there was laches.

We reach now the matter of the effect of the validation act (Chapter 14407, Laws of Florida Sp. Acts of 1929), which was thought by the chancellor to have cured any infirmities in the promissory notes now in suit. This conclusion was doubt-

less reached by him because of the statement by the federal court in Green v. City of Stuart, supra, by which he considered himself bound, that "any lack of power of appellee [City of Stuart] to bind itself by those notes when they were executed was cured by the above mentioned act of the Florida Legislature." We are unable to find in this act the curative effect accorded it. According to its title it was intended to authorize the issuance of $210,000 in bonds to liquidate "Outstanding Floating Indebtedness" and to validate "Said Indebtedness." In the body of the act it was recited that this so-called "floating indebtedness" amounted to $198,000; there followed this precise language, "(which indebtedness is hereby in all respects validated)." Under this act there was no other identification of the debt to be liquidated or refunded except for the language that it was "more particularly described in a certain resolution adopted by the City Commission of the City of Stuart, Florida, on the first day of March, 1929 . . . " Under the act the city was authorized either to sell the bonds and pay the indebtedness with the proceeds or to exchange the bonds for a like amount of the indebtedness. We think there was not sufficient identification in the act of the debt in litigation so that this statute might be held a ratification of the incurrence of that indebtedness. Moreover, it is obvious that neither the proceeds of the bonds nor the bonds themselves were applied to the debt because the original obligations are now declared upon in the suit which this one is brought to enjoin. There is no direct mention in the act of validation of appellee-Green's claim, but it is insisted here that the law, *in effect,* served to validate it.

The appellant has urged in this appeal the applicability of the decision in Town of Boca Raton v. Raulerson, 108 Fla. 376, 146 So. 576, while one appellee chose to ignore the case and the other sought to distinguish between it and the instant one because of ratification by the commission, a circumstance to which we have already referred and to which we shall again refer in our conclusion. It was there decided point-blank that sale to the city of property owned by a city commissioner was denounced by Section 7470, C.G.L., supra, and was void. So far as the principle is concerned, we have not been advised

what distinction exists between a sale by an owner and a sale by a corporation, where the former and a stockholder in the latter are officers of a city-grantee. The essential facts in the two cases seem to correspond.

In the case of Stockton Plumbing & Supply Co. v. Wheeler, 68 Cal. App. 592, 229 Pac. 1020, the Supreme Court of California held a contract with the city to be void even though the city commissioner who was a party to letting it held only the position of foreman with the other contracting party.

No reason occurs to us for discriminating between the two situations, and we are not disposed to recede from the pronouncement in Town of Boca Raton v. Raulerson. A municipal officer may not take advantage of his position for private gain. This is further reason for the view that the act of the legislature did not validate the debt, for a general law fixing a penalty against a public official who would profit from a sale to the city he served could not be repealed by inference.

An interesting discussion of this subject may be found in City of Los Angeles et al. v. Watterson et al., 8 Cal. App. (2nd) 331, 48 Pac. (2nd) 87, where it appears an action had been brought to recover bonds of an irrigation district because officers of the district were interested in the contract of sale. A general curative act had been passed by the legislature. It was argued that "it would have been lawful for the Legislature to have provided that an officer of an irrigation district might become a bidder . . . ; that, the Legislature having had the authority so to enact, a sale in which a director was interested can be ratified by subsequent legislative act." The court said: "The question raises the concept of a retrospective, implied repeal of the penal statute." Such a ratification, the court continued, "would operate to validate an act utterly void when done because prohibited by law and made a crime." Granting that "it is the general rule that the Legislature may ratify an act which it could have authorized," the court refused to invoke it "where to do so [would] not only . . . ratify a fraud, but . . . ignore an *applicable penal statute.*" Italics ours. The court closed the matter by saying there was no clear showing of such an intent on the part of the legislature.

Section 13 of the city charter prohibited any officer of the

city from becoming interested in the "profits or emoluments of any contract" and required the commission to declare any such contract void. Whether the commission has declared the transaction here void we do not learn from the record before us. It is only fair here to point out again that in the federal decision to which the chancellor alluded it was written that the city commission had ratified the transaction after the stockholder's connection with the city in the capacity of commissioner had been severed.

In Stockton Plumbing & Supply Co. v. Wheeler, supra, the court had before it for construction a section of a city charter providing that "any such contract in which any member is or may become interested, *may* be declared void by the Council." (Italics ours.) The court held that the verb gave the council no option, that such contract was absolutely void, and that "may" actually meant "must." Section 13 of the Stuart charter provides that "any such contract in which any member is, or may become interested, *shall* be declared void by the Commission." (Italics furnished.) It seems then that any attempt on the part of the city to ratify the forbidden contract would be futile.

We conclude that the bill should not have been dismissed; so the order is reversed with directions to fix a time for answer.

Reversed.

CHAPMAN, C. J., TERRELL, BUFORD and ADAMS, JJ., concur.

BROWN and SEBRING, JJ., concur in the conclusion reached that there is equity in the bill.