670 So.2d 986 (1996)
David R. BEACH and Linda M. Beach, his wife, Appellants,
v.
GREAT WESTERN BANK, Appellee.
No. 94-1049.
District Court of Appeal of Florida, Fourth District.
January 31, 1996.
Rehearing and Rehearing Denied April 15, 1996.
*988 James A. Bonfiglio of James A. Bonfiglio, P.A., Boynton Beach, for appellants.
Steven Ellison of Broad and Cassell, West Palm Beach, for appellee.
Rehearing and Rehearing En Banc Denied April 15, 1996.
WARNER, Judge.
This is a case of first impression in Florida. The issue presented is whether a consumer has a right to rescind a mortgage on a home, under 15 U.S.C.A. section 1635 of the Truth in Lending Act (TILA), as a defense by way of recoupment to the lender's foreclosure action, when the defense is asserted beyond the three year period set forth in the statute. See TILA, 15 U.S.C.A. § 1601 et seq. (West 1982 & Supp.1995). We hold that under Florida law, a consumer is not entitled to rescind the mortgage transaction and is limited to a damage set-off as provided in TILA.[1]
Congress originally enacted TILA to create disclosure requirements to insure meaningful disclosure of credit terms by lenders so that consumers could determine the reasonableness of a lender's charge. E.g., Johnson v. McCrackin-Sturman Ford, Inc., 527 F.2d 257 (3d Cir.1975). As part of the statutory requirements, the consumer is given the right to rescind a transaction that results in the creditor taking a security interest in the consumer's principal dwelling. 15 U.S.C.A. § 1635(a). The consumer has an absolute right to rescind the agreement for three business days following the closing of the transaction. Id. Rescission may be extended for up to three years if the creditor fails to make all material disclosures to the *989 borrower as required by TILA. 15 U.S.C.A. § 1635(f); Regulation Z, 12 C.F.R. Pt. 226.23(a) (1994) ("Reg. Z"). Exercise of the right to rescind under 15 U.S.C.A. section 1635 results in the discharge of the consumer's liability for any finance and other charges paid by the consumer and in the discharge of any security interest taken in conjunction with the extension of credit. 15 U.S.C.A. § 1635(b); Smith v. Fidelity Consumer Discount Co., 898 F.2d 896 (3d Cir.), aff'd in part, 898 F.2d 907 (3d Cir.1990). Thus, the lender would only be able to collect on the principal of the loan and would lose any security for the collection of the loan.
TILA also provides for money damages for TILA violations. 15 U.S.C.A. § 1640(a)(1)-(2)(A). While there is a one year limitation on the commencement of a cause of action for money damages, the statute specifically provides that as a defense of recoupment or set-off to an action for collection of the debt, a consumer may assert violations of TILA and the damages to which the consumer would be entitled under the statute. 15 U.S.C.A. § 1640(e).
With that brief overview of TILA, we turn now to the facts of this case. The appellants first obtained a mortgage from First Fidelity Savings and Loan for the construction of their residence. The mortgage was not strictly a construction loan mortgage as it reflected a 30-year payout. There was no requirement for conversion to permanent financing in the loan. After completion of the construction, the appellants moved in, made two payments, and then entered into a another loan transaction with the appellee Great Western Bank ("the bank"), the proceeds of which were applied to pay off and satisfy the original mortgage loan. The bank provided appellants with Truth in Lending Act disclosure documents. At the closing, the bank furnished the appellants with the three day notice of their right to rescind. The loan transaction closed in August of 1986.
On December 1, 1991, the appellants defaulted on the loan by failing to make their installment payments. In June 1992, the bank instituted foreclosure proceedings. The appellants raised affirmative defenses to the foreclosure action, including the assertion of their right to rescind and TILA damage claims. In ruling in favor of the bank upon final judgment, the trial court found, alternatively, that based upon certain factual stipulations, the transaction was an exempt transaction not subject to rescission, and also that the failure of the appellants to assert the right to rescind within three years of the closing of the transaction was fatal to the claim. The court then determined the actual damages of $396 and statutory damages of $1,000 to which the appellants were entitled under TILA, set them off against the balance due the bank, and determined that the bank's lien was superior to all other encumbrances. The court did not immediately order foreclosure. From that order this appeal has been taken.
The parties stipulated that the loan from the bank was made to satisfy the original lender's construction loan and to provide permanent financing. A mortgage loan secured to finance the acquisition or initial construction of a residence is exempt from the rescission requirements of TILA. 15 U.S.C.A. §§ 1635(e)(1), 1602(w). The staff commentary to Reg. Z, 12 C.F.R. Pt. 226.2(a), provides that where one creditor finances the initial construction of the residence and another creditor makes a loan to satisfy the construction loan and provide permanent financing, both transactions are residential mortgage transactions within the meaning of the exemption. Reg. Z, 12 C.F.R. Pt. 226, Supp. I, § 226.2, cmt. 2(a)(24)-4 (1994) (Official Staff Interpretations of Regulation Z). Based on the commentary together with the stipulation, the trial court found that both the First Fidelity loan and the bank's loan were residential mortgage transactions and therefore exempt from statutory rescission. On appeal, the appellants note that while the bank was paying off a construction loan, the original lender's loan not only was for construction but included permanent financing. In fact, the original loan partook of more characteristics of permanent financing than construction financing. Moreover, the appellants occupied their home for a few months before applying for the bank loan. Finally, the appellants more or less claim that the bank waived its *990 right to assert an exemption from rescission because the bank in fact gave them that right in their disclosure documents at closing, thus acknowledging that the transaction was not exempt. We tend to agree that the stipulation is not dispositive and that the factual aspects of this transaction indicate that this is not an exempt transaction. However, further discussion of this point is unnecessary because of our other holding.

The Right of Rescission
The appellants contend that they can assert the right of rescission as a defense in recoupment for TILA violations even beyond the three year period of the statute, relying on Dawe v. Merchants Mortgage and Trust Corp., 683 P.2d 796 (Colo.1984).[2] The trial court rejected the rationale of Dawe, determining that Congress's omission of recoupment or set-off in the section providing for rescission, 15 U.S.C.A. section 1635(f), while inserting in it the damages provision, 15 U.S.C.A. section 1640(e), established that the right of rescission was not a defense in recoupment and that the right expired after three years. We agree for the following reasons.
In 15 U.S.C.A. section 1635(f), Congress provides:
An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon sale of the property, whichever occurs first....
15 U.S.C.A. § 1635(f) (emphasis supplied). In Dawe, the Colorado Supreme Court held that a debtor's demand for section 1635(f) rescission constituted a defense in the nature of recoupment and thus, the debtor was not barred by the three year expiration period. The court relied on Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), which held that because recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded, it is never barred by the statute of limitations so long as the main action itself is timely. 295 U.S. at 262, 55 S.Ct. at 700-701. However, the recoupment ordered by the Supreme Court was the offset of estate taxes erroneously paid on a transaction, when raised as a defense to a suit by the government for the payment of income taxes on the same transaction. The court viewed the retention of the estate taxes paid to the government through mistake as tantamount to fraud, and the government's retention of those tax payments was unjust and immoral. Recoupment was therefore equitable in nature to prevent an unjust result. In concluding recoupment could be raised as a defense, the Court cited as authority the case of Williams v. Neely, 134 F. 1 (8th Cir.1904). That case emphasized that "recoupment is, in its nature and essence, an equity.... Recoupment is the keeping back of something that is due because there is an equitable reason for holding it." Id. at 4-5.
The right of rescission for violations of TILA does not, in our opinion, fall within those equitable reasons required to apply recoupment. Because under section 1640 the borrower is entitled to assert damages as a defense in recoupment, the borrower is compensated for any monies which the creditor may have collected or will collect for violations of TILA. The further remedy of rescission under TILA is a penalty provision to the creditor, not a remedy required by equity and good conscience beyond the statutory period of three years.
Dawe also suggests that it is necessary to allow rescission as recoupment beyond the three year period, because if it were barred, lenders could avoid the penalties of TILA by waiting three years to sue on the borrowers' default and thereby frustrate the statutory policy. First, we find it unlikely that a lender would hold a loan in default for two or three years without taking action to collect it. Modern banking regulations make this highly unlikely. Regardless of the lender's actions, default on the note by the borrower is the triggering event of any suit to foreclose on the security interest. If the borrower pays on the loan as required, there is no reason for the lender to sue the borrower. Therefore, *991 it is entirely within the control of the borrower as to whether the creditor has the ability to foreclose on its security interest in the residence. The buyer could bring a direct claim during the first three years, and after that time, merely by defaulting on the mortgage and forcing a foreclosure action, the buyer could also secure rescission by way of recoupment. Thus, by using recoupment as a method of asserting rescission, the buyer could take advantage of the remedy throughout the entire life of the secured transaction, rendering the statutory limitation meaningless. For this reason, we do not find that Dawe's argument that lenders could take advantage of the claim is persuasive. Borrowers also could take advantage of the creditor by strategically defaulting and asserting rescission as a recoupment defense.
Whether one may agree with Dawe or not, the ultimate question is whether as a matter of Florida law, the defensive assertion of rescission should be allowed. The appellants argue that Allie v. Ionata, 503 So.2d 1237 (Fla.1987), permits the assertion of their statutory right of rescission as a defense in recoupment. Allie recognized the basic rule that recoupment may be asserted even though the underlying claim is barred by the applicable statute of limitations as an independent cause of action. It further held that once a party files an affirmative action, the defendant may assert any affirmative defense or compulsory counterclaim which stems from the same transaction. Id. at 1240. Allie addressed a claim barred by a statute of limitations, which bars not the right, but the remedy. Id.
As explained later in Rybovich Boat Works, Inc. v. Atkins, 585 So.2d 270 (Fla. 1991), the holding of Allie "rested primarily on considerations of public policy and fairness as well as an analysis of the purpose of statutes of limitation." Id. at 271. Allie considered the application of limitations to claims for damages at common law. Rybovich, on the other hand, refused to permit the assertion of a time-barred claim for specific performance of a real estate contract as a defense to an action for damages under the contract, noting the adverse consequences on the free alienability of title through the resurrection of a barred specific performance claim. In the instant case, the bank points out that in its report to Congress on Truth In Lending in January 1972, the Board recommended that a limitation on the right to rescind be established because the title to residential real properties may become clouded by the uncertainty regarding the right of rescission. Board of Governors of the Federal Reserve System, Annual Report to Congress on Truth In Lending for the Year 1971. That limitation was eventually enacted as section 1635(f).
The three year limitation contained within section 1635(f) is not a limitation on the remedy, but an expiration of the right after three years from the date of the closing of the transaction. In Bowery v. Babbit, 99 Fla. 1151, 128 So. 801 (Fla.1930), the court noted a general rule of construction:
[W]here a statute confers a right and expressly fixes the period within which suit to enforce the right must be brought, such period is treated as the essence of the right to maintain the action, and that the plaintiff or complainant has the burden of affirmatively showing that his suit was commenced within the period provided. [citations omitted]. In other words, when the right and the remedy are created by the same statute, the limitations of the remedy are treated as limitations of the right.
Id. at 1163, 128 So. at 806 (citations omitted). Our court followed that rule in Fowler v. Matheny, 184 So.2d 676 (Fla. 4th DCA 1966), in construing a limitation period contained within the Uniform Sale of Securities Law:
F.S.A. § 517.21 created an entirely new right of action that did not exist at common law and expressly attached thereto, without any exception, the proviso that the action must be brought within two years from the date of sale [of securities]. Such a limitation of time is not like any ordinary statute of limitation affecting merely the remedy, but it enters into and becomes a part of the right of action itself, and if allowed to elapse without the institution of the action, such a right of action becomes extinguished and is gone forever.
*992 Id. at 677; see also Special Disability Trust Fund v. Southern Bell Tel. & Tel. Co., 551 So.2d 575 (Fla. 1st DCA 1989).
This point was not addressed by Dawe, which made the assumption that section 1635(f) was a statute of limitations which barred a remedy as opposed to a special statutory action with its own limitation. However, this assumption is contrary to federal statutory construction principles. In Simon v. United States, 244 F.2d 703 (5th Cir.1957), the court explained the difference in terms much like Bowery:
That this is hornbook law, a reference to 34 Am.Jur. `Limitation of Actions', Sec. 7, `Qualifications Annexed to Right of Action' will show: `A statute of limitations should be differentiated from conditions which are annexed to a right of action created by statute. A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable condition of the liability and of the action which it permits. The time element is an inherent element of the right so created, and the limitation of the remedy is a limitation of the right. Such a provision will control, no matter in what form the action is brought. The statute is an offer of an action on condition that it be commenced within the specified time. If the offer is not accepted in the only way in which it can be accepted, by a commencement of the action within the specified time, the action and the right of action no longer exist, and the defendant is exempt from liability. * * *' (Emphasis supplied.)
Id. at 704-05. Thus, Florida law and federal law appear consistent as to the proper analysis of this statute.
The right of rescission of a security interest for material violations of TILA disclosures is not a right existing under the common law. It is clearly and only the creation of statute. While the legislature may be without power to abolish common law rights, the legislature may create other rights and impose on them such limitations as it deems advisable. When it does, those limitations form part of the assertion of the right itself. Bowery. Here, a borrower has the right to rescind a transaction for TILA violations within three years of closing or until sale of the property. Therefore, based upon Bowery, Fowler, and Simon, that right was extinguished with the lapse of the three year period contained within the statute's terms.
Indeed, one may glean this construction from the very language of the statute itself. "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon sale of the property, whichever occurs first...." 15 U.S.C.A. § 1635(f) (emphasis supplied). The remedy is not merely barred: the right dies with the lapse of time.[3]
Other portions of TILA also support our construction. Section 1640 provides for damages for TILA violations. While the statute contains a one year limitation for actions for damages, it also specifically provides that despite the limitation, damages may be sought as "defense by recoupment or setoff." Certainly, when Congress intended that recoupment should be allowed, it knew how to say it. See Russello v. United States, 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (when Congress includes particular language in one section of a statute and omits it in another section of the same act, it is generally presumed Congress acts intentionally and purposely in disparate inclusion or exclusion). Therefore, if this were a matter of legislative intent, traditional rules of statutory construction would lead us to the conclusion that we cannot infer a Congressional intention to permit rescission beyond three years. Thus, there appears no policy reason apparent in the statute for our court to permit an expired *993 right to be asserted as an equitable defense of recoupment.
A Florida case most closely analogous to the present case is Devlin v. Aetna Finance Co., 379 So.2d 972 (Fla. 5th DCA), cert. denied, 389 So.2d 1108 (Fla.1980). In Devlin, the creditor had filed suit to recover a debt to which the borrower asserted TILA violations as a common law recoupment defense. At the time the suit was instituted, section 1640 of TILA provided that an action for damages expired one year from the closing of the transaction. There was no extension for recoupment. The county court and then the circuit court sitting in its appellate capacity both determined that the defense could not be asserted beyond the statutory limitation. On petition for writ of certiorari review, the district court found no departure from the essential requirements of law, holding as follows:
Whether the statutory right to recover twice the finance charges under the Federal Truth In Lending Act may be asserted beyond the one-year statutory limitation is, in our opinion, a legislative decision for Congress. The statute as written provides a one year limitation which we find clear and properly enforceable to bar the recoupment defense here asserted.
Congress well knew that most debtors would become aware of creditor violations in the Truth In Lending Act only when the debtor contacts a lawyer to defend a suit on the debt brought by the creditor. The policy decision of whether the penalty of twice the finance charge is an affirmative cause of action or a defense is one best left to the Legislature rather than the courts. Congress presumably enacted the one-year limitation for some reason and they were aware of the realities of consumer credit transactions as indicated above. We are advised by counsel for petitioners than an amendment to the Truth In Lending Act is pending in Congress which would specifically answer the question posed in these cases. We are convinced that the remedy of the petitioners/debtors herein is by a change in the statute.
Id. at 973-74 (citation and footnote omitted). The court was referring to the 1980 amendment which permitted the assertion of damages as a defense in recoupment beyond the one year limitation. As noted before, Congress did not see fit to add the same savings clause to section 1635. The reasoning of Devlin is consistent with our analysis.
The appellants point to the policy of the courts that TILA be liberally construed in favor of the consumer to effectuate its remedial purpose. See Flesher v. Household, Fin. Corp., 640 F.2d 861 (6th Cir.1981); Riggs v. Government Employees Fin. Corp., 623 F.2d 68 (9th Cir.1980). However, as noted in Riggs, the courts which have construed the Act as remedial have been concerned with the damage remedies under section 1640. Riggs, 623 F.2d at 70. By allowing damages for TILA violations as a claim in recoupment, the lender is penalized for violations and the consumer is entitled to offset the indebtedness either by the borrower's actual damages or by statutory damages, whichever is greater. A liberal construction of TILA does not require the court to add remedies where Congress chose not to permit them, particularly where the alternative remedy of damages is available. To allow the consumer to assert the expired right of rescission in recoupment as a matter of public policy where Congress has not chosen to extend it does not sufficiently provide us with a public policy reason for extending recoupment. Under the law of Florida and our construction of TILA, we hold that the statutory right of rescission under TILA expires three years after the closing of the transaction and may not be revived as a defense in recoupment in an action to collect the debt upon the buyer's default.
With respect to the other points raised on appeal, we find that the trial court committed no reversible error, and therefore we affirm the final judgment.[4]
*994 Because this is a question of great public importance, potentially affecting thousands of mortgages in the state, we also certify the following question:
UNDER FLORIDA LAW, MAY AN ACTION FOR STATUTORY RIGHT OF RESCISSION PURSUANT TO THE TRUTH IN LENDING ACT, 15 U.S.C.A. SECTION 1635 BE REVIVED AS A DEFENSE IN RECOUPMENT BEYOND THE THREE YEAR LIMIT ON THE RIGHT OF RESCISSION SET FORTH IN SECTION 1635(f)?
DELL, J., concurs.
PARIENTE, J., dissents with opinion.
PARIENTE, Judge, dissenting.
The majority concludes that Florida law would not permit a debtor to raise an untimely claim for rescission under TILA as a defense to a mortgage foreclosure action. I disagree and find support for the ability of the debtor to raise the claim defensively in both Allie v. Ionata, 503 So.2d 1237 (Fla. 1987), and Beekner v. L.P. Kaufman, Inc., 145 Fla. 152, 198 So. 794 (1940).
The majority's rejection of the defensive use of rescission rests on its interpretation of congressional intent. To the extent that the majority's opinion turns on construing congressional intent by reading the provisions of TILA in pari materia, it is certainly reasonable, based on a comparison of 15 U.S.C.A. § 1635(f) with 15 U.S.C.A. § 1640(e), to reach a conclusion that Congress intended to cut off the right of rescission after three years, allowing only set-off of damages as a defense in recoupment. See Truth in Lending Act, 15 U.S.C.A. §§ 1601-1677 (West 1982 & Supp.1995).
However, this construction of congressional intent is less reasonable in light of the 1995 amendment, § 1635(i)(3), which provides that "[n]othing in this subsection affects a consumer's right of rescission in recoupment under State law." This amending language, which applies to all consumer credit transactions in existence, runs contrary to an interpretation that Congress intended to treat the right of rescission as governed by a strict statute of repose, precluding the ability of the debtor to raise it defensively. See James v. Home Constr. Co., 621 F.2d 727 (5th Cir.1980); Dawe v. Merchants Mortgage & Trust Corp., 683 P.2d 796, 798 n. 5 (Colo. 1984). But see Jamerson v. Miles, 421 F.Supp. 107 (N.D.Tex.1976), disagreed with, James, 621 F.2d at 728; Fenton v. Citizens Sav., 400 F.Supp. 874 (C.D.Mo.1975). Moreover, § 1635(f) was not part of the original statute, but rather has been described as part of a series of technical amendments designed to improve the administration of TILA.[5] In fact the original version of § 1635, which created the statutory remedy of rescission, had no time limitations.
I would follow the rationale first enunciated in Dawe and subsequently adopted by the courts in FDIC v. Ablin, 177 Ill.App.3d 390, 126 Ill.Dec. 694, 532 N.E.2d 379 (1988), and Community National Bank & Trust v. McClammy, 138 A.D.2d 339, 525 N.Y.S.2d 629 (1988), that the debtor's right to rescind, while barring a claim for affirmative relief after the limitations period has run, is not a bar to asserting that claim as a defense. *995 These courts, however, did not discuss whether the rescission remedy would be applied in a different manner because it was raised defensively. Yet, the Dawe court did observe that the debtors did not seek restitution of the installment payments; rather, they sought to avoid liability for future payments on the note. Dawe, 683 P.2d at 799.
Part of the difficulty in analyzing this issue has been the use of the concept of rescission by way of recoupment.[6] Although historically the plea of recoupment differed from the plea of set-off in some significant respects, the distinctions between the pleas have been largely eliminated by statute and by rules of modern pleading as explained in some detail by Justice Shaw in Cherney v. Moody, 413 So.2d 866 (Fla. 1st DCA 1982), adopted, Allie, 503 So.2d at 1239. Thus, the over-all concept, whether referred to as recoupment, set-off, compulsory counterclaim or affirmative defense, is that a party otherwise barred from instituting an action because of a time limitation was freed from that bar when acting in a defensive posture. Allie. The Eleventh Circuit in Smith v. American Financial Systems, 737 F.2d 1549, 1552 (11th Cir.1984), enunciated a three-part test for recoupment: 1) the TILA violation and the creditor's debt arose from the same transaction; 2) the debtor is asserting the claim as a defense; and 3) the main action is timely. All three prerequisites are satisfied here.
The majority views rescission as having inflexible and draconian ramifications for the lender automatically resulting in cancellation of its security interest.[7] Certainly when viewed in this light, rescission varies significantly from the type of claims which could traditionally be pled as a defense in recoupment.
However, § 1635(b) provides that "[t]he procedures prescribed by this subsection shall apply except when otherwise ordered by a court." See also 12 C.F.R. § 226.23(d)(4) ("[t]he procedures outlined ... may be modified by court order"). Rather than creating an inflexible penalty for TILA violations, courts addressing this issue have permitted judicial modification of the statutory rescission process. See, e.g., Williams v. Homestake Mortgage Co., 968 F.2d 1137 (11th Cir.1992). When viewed as a flexible remedy, a "court may impose conditions that run with the voiding of a creditor's security interest upon terms that would be equitable and just to the parties in view of all surrounding circumstances." Id. at 1142. In Williams, the bank's request had been to condition voiding of the security interest upon the debtor's return of the loan proceeds:
In deciding whether or not to impose conditions upon Williams, the district court should consider traditional equitable notions, including such factors as the severity of Homestake's TILA violations and whether Williams has the ability to repay the principal amount. While the goal should always be "to restor[e] the parties to the status quo ante," [citations omitted] rescission must also maintain its vitality as an enforcement tool.
Id. If rescission can be applied as a flexible equitable remedy, there appears to be compelling public policy reasons for allowing rescission to be pled as a defense in recoupment if otherwise allowed by state law, with the precise method of enforcing the remedy left to judicial determination based on the surrounding circumstances.
If TILA does not expressly preclude a debtor from raising rescission as a defensive claim, then the question is whether Florida law otherwise would prohibit it. The majority concludes that Florida law would bar a *996 debtor's right to raise rescission as an affirmative defense or compulsory counterclaim. I respectfully disagree.
Florida clearly adheres to the principle that the defense of recoupment may be asserted even though the underlying claim is barred by the applicable statute of limitations as an independent cause of action. See Allie. In its holding, Allie relied on Beekner, which recognized the right of the debtor to raise the defense of usury when a lender sued on a usury-infected contract, even though the claim of usury as an affirmative cause of action would have been barred. In Beekner, the lender sued to foreclose a mortgage securing notes for a loan. The debtor raised usury as a defense to defeat foreclosure. Our supreme court first pointed to the public policy considerations of allowing the debtor to raise usury, observing that "a contrary holding would enable the lender to purge a usury infected contract by the simple process of awaiting the running of the statute of limitations before bringing the suit." Beekner, 145 Fla. at 156, 198 So. at 796. The court went on to explain that:
This view, regardless of the nicety of pleading is strengthened by the general proposition that a defense should be as long-lived as a cause of action.... This rule in law would not be more generous in its effect than a similar one in equity.
Id. at 156-57, 198 So. at 796. The Beekner court approved of the use of usury as a shield to defeat recovery, but left unanswered the question of whether the time-barred claim could also be used as a sword to obtain affirmative relief. That question was answered in Allie.
In Allie our supreme court held that not only could a time-barred claim be raised as a defense, but the claim could be used as a vehicle for obtaining affirmative relief instead of merely defeating recovery. Allie concerned a seller who sued for the unpaid balance on the notes for two tracts of land. The buyer then interposed the seller's fiduciary breach and pled recoupment as a defense, requesting restitution and rescission of the contracts for the sale of the land. Our supreme court allowed the defensive claims of rescission and restitution, even though the statute of limitations for rescission of the contract had expired and the buyer would have been unable to institute an action for rescission.
The Allie court reasoned that limitation statutes were "designed as shields to protect defendants against unreasonable delays in filing law suits and to prevent unexpected enforcement of stale claims." 503 So.2d at 1240. However, these purposes are inapplicable when the same claim is raised as a defense:
A party who seeks affirmative relief, whether through an original complaint or a counterclaim, effectively asserts that he is prepared to prosecute all aspects of that matter. Having sufficient knowledge of the facts to support a complaint and sufficient evidence to prosecute that complaint, he must be prepared to defend against any affirmative defenses arising therefrom. Thus, once a party files an affirmative action, he cannot thereafter profess to be surprised by or prejudiced by affirmative defenses or compulsory counterclaims that stem from that action.
Id. The holding in Allie rested primarily on considerations of public policy and fairness as well as an analysis of the purposes of statutes of limitations.
By permitting an otherwise-expired cause of action to be raised as an affirmative defense or a compulsory counterclaim, Allie allowed the defendant to recover an affirmative judgment. Because the defensive claims included restitution and rescission, the holding in Allie is particularly applicable to the analysis of what defenses Florida would allow a debtor to raise under TILA in a case arising from the same loan transaction.
Rybovich Boat Works v. Atkins, 585 So.2d 270, 272 (Fla.1991), while approving Allie, did not extend the defense of recoupment to allow a time-barred action for specific performance of a contract for the purchase and sale of real property. However, our supreme court specifically acknowledged that other remedies available to an aggrieved buyer could include rescission as well as liquidated damages. Id. Allowing a debtor to raise a TILA defense to a suit for foreclosure on a *997 mortgage is far closer to Beekner where the effect of allowing a time-barred claim of usury was to defeat the foreclosure action and to Allie where the court allowed the defensive claims of restitution and rescission.
I also disagree with the majority's reasoning that because the TILA cause of action runs from the date of the incident the principles underlying the defense of recoupment as explained in Allie and Beekner are rendered inapplicable. Although TILA has created a new statutory cause of action, the remedy of rescission is one derived from the common law. The statute modifies the common law right of rescission and renders it an available remedy for statutory violations of TILA. Also, the cases cited by the majority do not address the issue of whether an expired cause of action could nevertheless be raised defensively. Because the right of rescission is one derived from the common law, I do not see how it could be abrogated without a clear statutory expression of intent to do so especially in light of the 1995 amendments which added the language stating that "[n]othing in this subsection affects a consumer's right of rescission in recoupment under State law." See James.
Because there is no question that TILA defenses can be raised and presented to the trial court in a suit for mortgage foreclosure, the controversy is over the extent of the remedy available to rectify violations of TILA arising out of the loan transaction. In my opinion, allowing a defense of rescission in combination with vesting trial courts with the discretion to consider equitable factors before ordering rescission comes closest to effectuating the congressional intent of TILA without running afoul of Florida law.
NOTES
[1] We have reviewed the Truth in Lending Act Amendments of 1995, which the appellants have supplied as supplemental authority. Pub.L.No. 104-29, 109 Stat. 271 (September 30, 1995). Section 8 of the Truth in Lending Act amendments of 1995 addresses rescission rights inforeclosure and amends 15 U.S.C. section 1635. The amendments in part provide that "[n]othing in this subsection affects a consumer's right of rescission in recoupment under State law." Id. § 8 (to be codified at 15 U.S.C. § 1635(i)(3)). While we do not analyze whether and to what extent these amendments have retroactive effect, we have analyzed and applied Florida law to resolve the instant case.
[2] Dawe has been relied on by other courts, and we recognize that there is a split of authority in the country on this issue. We do not cite or distinguish the other cases because their reasoning is consistent with Dawe.
[3] The statute is in the nature of what we term a statute of repose rather than a statute of limitation, as the time period runs not from the borrower's discovery of TILA violations but from the closing of the transaction. As to the distinction between statutes of limitation and statutes of repose, see generally Kush v. Lloyd, 616 So.2d 415 (Fla.1992).
[4] We note that the trial court found that the bank violated TILA by including the intangible tax as part of the amount financed. We have recently held in Pignato v. Great Western Bank, 664 So.2d 1011 (Fla. 4th DCA 1995), that this is not a violation of TILA. However, the bank did not cross-appeal this issue. Therefore, it has not been preserved for review.
[5] In James v. Home Construction Co., 621 F.2d 727 (5th Cir.1980), the fifth circuit addressed the issues of whether the newly-enacted three-year statute of limitations should apply prospectively and whether a TILA cause of action survives the death of the party. James rejected the notion that § 1635(f) was a limitation on the existence on the substantive right to rescind rather than a true statute of limitations. The court observed:

The fact that s 1635 is a statutorily created right and not a common law one should make little difference in a consideration of whether or not this cause of action survives. Rather, the key inquiry in a situation like this one centers on what was the Congressional intent in passing s 1635(f). We think it clear that Congress meant to have the statute applied prospectively. First, the Truth-in-Lending Act, a remedial act, has usually been given a broad liberal interpretation since it is assumed that was the intent of Congress. Littlefield v. Walt Flanagan & Co., 498 F.2d 1133 (10th Cir. 1974). Second, the Conference Committee report on the Truth-in-Lending Act amendments of which s 1635(f) were [sic] a part, described these amendments as "a series of basically technical amendments designed to improve the administration of the Truth in Lending Act." H.R.Conf.Rep. No. 93-1429, 93d Cong., 2d Sess. (1974), U.S.Code Cong. & Admin.News 1974, pp. 6119, 6152.
Id. at 729.
[6] Recoupment was a plea of common law origin arising from the same transaction which did not allow the recovery of an affirmative judgment; whereas setoffa defense of statutory origin could arise from a separate transaction and would permit recovery of an affirmative judgment. Modern rules of procedure have largely obliterated the historical distinctions. See Cherney v. Moody, 413 So.2d 866 (Fla. 1st DCA 1982), adopted, Allie v. Ionata, 503 So.2d 1237, 1239 (Fla.1987). For a discussion of the divergent authority between the courts in viewing TILA claims as either pleas of set-off or recoupment, see generally Smith v. American Financial Systems, 737 F.2d 1549, 1552-53 (11th Cir.1984).
[7] In support of this conclusion, the majority cites to the language of § 1635(b) and Smith v. Fidelity Consumer Discount Co., 898 F.2d 896 (3d Cir.), aff'd in part, 898 F.2d 907 (3d Cir.1990).